505 So.2d 459 (1987)
APERM OF FLORIDA, INC., and Travelers Insurance Company, Appellants/Cross Appellees,
v.
TRANS-COASTAL MAINTENANCE COMPANY, a Florida Corporation, Appellee/Cross Appellant.
No. 85-2144.
District Court of Appeal of Florida, Fourth District.
February 11, 1987.
Rehearing and Certification Denied May 4, 1987.
*460 Steven R. Berger and William Liston of Steven R. Berger, P.A., Miami, Law Offices of James O. Nelson and Peterson & Fogarty, P.A., West Palm Beach, for appellants/cross appellees.
Robert L. Vessel, Daniel P. Mitchell and Leslie C. Riviere of Mitchell, Alley, Rywant and Vessel, P.A., Tampa, for appellee/cross appellant.
GLICKSTEIN, Judge.
The corporate defendant and its insurer appeal the judgment for attorney's fees, and the plaintiff cross appeals the amount of the judgment for attorney's fees. On the main appeal we affirm the judgment for attorney's fees as to the insurer and reverse as to the corporate defendant. However, we reverse the amount of attorney's fees and remand with direction to apply the procedure, recited in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), which is to be applied where a contingent fee contract exists.
Trans-Coastal Maintenance Company (TCM) filed suit against Aperm and its insurer, Travelers Insurance Company, for damages resulting from a defect in a product furnished TCM by Aperm. The defendants filed separate answers and affirmative defenses. Travelers filed a cross-claim for declaratory judgment respecting the insurance coverage it had afforded.
According to TCM, prior to trial TCM moved to amend its complaint to add a claim for attorneys' fees, claiming TCM was an insured under an endorsement to the Travelers policy and therefore, as a first party insured, could claim attorney's fees under section 627.428, Florida Statutes (1983). The court took the motion to amend under consideration, and no actual amendment was ever filed.
Eventually, the trial court rendered partial summary judgment in favor of TCM against Aperm on the issue of liability, and in favor of and against Travelers on others. Subsequently, trial was held. Pursuant to the verdict on the question of damages, the court entered final judgment in favor of TCM against Aperm and Travelers in the amount of $193,516. The judgment has been satisfied.
TCM filed a motion for attorney's fees. The court entered an order for attorney's fees in favor of TCM against both Aperm and Travelers in the amount of $22,075. Aperm and Travelers timely noticed their appeal, and TCM cross appealed.
TCM is a roofing contractor doing business in Palm Beach County. Aperm of Florida, Inc. contracted with TCM in 1981, giving TCM an exclusive license to sell a roofing product called Aperm in south Florida. The contract contained a five year non-leak warranty. The product failed after being applied to customers' roofs. TCM was required to correct the defects in the work it had done, thus incurring damage and expenses.
Aperm had a liability insurance policy from Travelers, issued in Columbia, South Carolina. This policy named as insureds Roof Industries, Inc., Aperm Southeast, Inc., and Aperm of Florida, Inc. with a Columbia address and a Columbia mailing address. The type of liability alleged by TCM was covered by this policy.
An endorsement to the policy, labeled "Additional Insured (Vendors  Limited Form") amended the definition contained in the policy of "persons insured" to include "any person or organization (herein referred to as `vendor'), as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products." The issues, restated are as follows:
APPEAL
I. Whether the trial court erred in applying section 627.428, Florida Statutes, because the subject policy of insurance, according to appellant, was not delivered in Florida nor issued for delivery in Florida. We conclude it did not.
II. Whether the trial court erred in awarding appellee attorney's fees in appellee's action against a named insured and its insurer, as section 627.428 is not *461 applicable in favor of a third party claimant, which was appellee's proper status. We conclude it did as to the insured but not the insurer.
CROSS APPEAL
III. Whether the trial court erred in disregarding appellee/cross appellant's contingent fee contract with its counsel, and awarding a $125 per hour fee. We conclude it did.

I

DELIVERY
Section 627.428, Florida Statutes (1983), states in pertinent part:
(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
This provision has not changed appreciably in meaning  though the exact verbiage has changed  in many years. Cf. § 625.08, Fla. Stat. (1957).
Appellants point out that the following provision of section 627.401 governs part II of chapter 627, in which part section 627.428 appears: "No provision of this part of this chapter applies to ... (2) Policies or contracts not issued for delivery in this state nor delivered in this state, except as otherwise provided in this code."
Appellants contend that on the face of the policy, it was issued other than in Florida for delivery other than in Florida, since Aperm's address and mailing address, stated in the policy, were both in Columbia, South Carolina; therefore the attorney's fee provision found at section 627.428 is inapplicable in the instant case.
Appellee responds by asserting that the insurance policy involved in the present case was issued for delivery in the state of Florida. Appellee contends that according to case law a policy issued in another state but intended to cover an insured that maintains a place of business in Florida is, if the situs of the risk is known to the insurer, constructively delivered in Florida or issued for delivery there.
In Gillen v. United Services Automobile Association, 300 So.2d 3 (Fla. 1974), an automobile insurance policy had been issued in New Hampshire and delivered there when the insureds were residents there. Subsequently the insureds moved to Florida and notified the insurer thereof. Still later the insureds were in an accident in which the husband was killed and the wife seriously injured.
At issue in Gillen was not the applicability of the attorney's fee provision of significance in the instant case, but whether New Hampshire or Florida law should apply. The policy had an "other insurance clause" which was proper under New Hampshire law but against public policy in Florida. The Florida Supreme Court held that Florida law would govern interpretation of the contract; although the contract had originally been issued and delivered in New Hampshire, the risk covered by the policy was subsequently centered in Florida with the insurer's knowledge. There were only minimal contacts with New Hampshire in terms of actual risk, whereas Florida had a significant relationship to the contract.
Appellee cites East Coast Insurance Company v. Cooper, 415 So.2d 1323 (Fla. 3d DCA 1982), which directly addresses whether the appellees held a policy or contract issued for delivery or delivered in Florida  the necessary condition for award of attorney's fees under the insurance statute. The Cooper court wrote:
Implicit in the jury determination that East Coast provided coverage was a finding that the policy had been issued for delivery in Florida. IBI-FLA's principal place of business is located in Miami. The fact that the policy was actually delivered in New York is not significant *462 to our determination that it was "issued for delivery" to a Florida resident. Based upon our finding that the policy should have been issued for delivery in Florida, we hold that the Coopers qualified to obtain attorney's fees.
Id. at 1325. Implicit in this reasoning is the principle appellee advocates. The holding appears to say, if it is found that the policy was written to cover risks that would occur in Florida, then it will be assumed the policy was issued for delivery in Florida.
The Cooper court reasoned further that the policy had in fact been delivered in Florida because the legislature, in section 627.402, Florida Statutes, defines policy as either the actual contract or a certificate of that contract, excluding certificates, issued to individuals, of group life or disability insurance or group annuities. Certificates of the insurance involved in Cooper had been sent to Florida.
Mainly on the strength of Cooper, we conclude the trial court's implicit decision here that the statutory delivery requirement was met should stand. The stipulated statement does not tell us that the insurer had reason to believe the principal risk under the contract would be in South Carolina or some other foreign area, rather than in Florida, nor have we any other record information. It was up to appellant to show us such record information, if it exists. In these circumstances we presume the trial court had a basis for its conclusion.
As is pointed out in United States Fire Insurance Company v. Pruess, 394 So.2d 468, 470 (Fla. 4th DCA 1981), there is a general rule of law that terms of an insurance policy must be construed to promote a reasonable, practical and sensible interpretation consistent with the intent of the parties. The principle implicit in Cooper  that if the primary risk was in Florida the policy was issued for delivery in Florida  is a cognate idea. There is a further principle for construction of insurance policies that, if extrapolated, would take us to the same conclusion: That if a provision of a policy is ambiguous, the provision should be construed strictly against the insurer and in favor of the coverage. Id. at 470. What an anomalous situation it would be to establish in court that there was policy coverage in Florida, but to have no right to attorney's fees because the policy happened to be written in another state. Foreign underwriters in the long run would lose more than they could gain from such a state of affairs, as they would be avoided by Florida insureds unless delivery was clearly here.

II

THIRD PARTY OR INSURED
It is clear that Aperm is not an insurer and therefore cannot be liable for attorney's fees under section 627.428. Appellant's next contention is that TCM was a third party, or was asserting a third party interest, whereas section 627.428 provides for attorney's fees from the insurer to a prevailing insured.
It is clear that the statute does not provide for the insurer's liability for attorney's fees when a third party beneficiary prevails in a suit over coverage. E.g., Industrial Fire & Casualty Insurance Company v. Prygrocki, 422 So.2d 314 (Fla. 1982); Powell v. Allstate Insurance Company, 479 So.2d 149 (Fla. 4th DCA 1986). In Prygrocki, the Florida Supreme Court made clear that those eligible to receive attorney's fees under section 627.428(1) are not merely the contracting insured, his estate, named beneficiaries, and assignees, but all insureds under the terms of the insurance contract.
If TCM were itself a third party claimant and no more, it would not be entitled to attorney's fees under section 627.428(1); but there is no reason why TCM's statutory right should be affected by the fact that the original injury  for which TCM made good  occurred to third parties.
It is true that in its complaint TCM referred to itself as a third party, but this does not alter the fact that under the vendors endorsement of the policy TCM was an insured, and that it was here suing for *463 damages and expenses incurred by it as a vendor, and not as one on whose roof the defective product had been applied.

III

AMOUNT OF ATTORNEY'S FEES
The attorney here had contracted with the plaintiff/cross appellant, for a contingent fee. The trial court awarded attorney's fees in the amount of $22,075, which had to have been reached by applying an hourly rate of $125 to the time expended according to the attorney's log. Cross appellant contends it was error of the court not to take into consideration existence of the contingent fee contract. Cross appellee responds the amount of the fee, if it was to be awarded, was in the sound discretion of the court, and should stand.
The controlling law for determining reasonable attorney's fees was stated by the Florida Supreme Court in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). Cross appellee questions the applicability here of the rule stated there, but there is no solid reason why the rule should not apply equally when the attorney's fees are authorized under an insurance statute as when the authority is a medical malpractice statute.
In essence, Rowe adopts the federal lodestar process for determining reasonable attorney's fees. It starts with the number of hours reasonably expended by counsel on the litigation, based on accurate records kept by counsel. As a second step the court feeds in the eight criteria, excluding only time and labor (already determined), stated in Disciplinary Rule 2-106(B), The Florida Bar Code of Professional Responsibility, which the Rowe court noted would be carried over into the new code then being considered. This second step results in determination of a reasonable hourly rate; and one of the factors is, in practical terms, the market rate charged in the community by lawyers of comparable skill, experience and reputation for similar services.
What is particularly significant is the holding in Rowe respecting what it calls the contingency risk factor. While there is specific reference to personal injury cases, we see no reason why the same reasoning should not apply wherever a contingent fee contract exists if it is not unconscionable. The Rowe court wrote:
The contingency risk factor is significant in personal injury cases. Plaintiffs benefit from the contingent fee system because it provides them with increased access to the court system and the services of attorneys. Because the attorney working under a contingent fee contract receives no compensation when his client does not prevail, he must charge a client more than the attorney who is guaranteed remuneration for his services. When the prevailing party's counsel is employed on a contingent fee basis, the trial court must consider a contingency risk factor when awarding a statutorily-directed reasonable attorney fee. However, because the party paying the fee has not participated in the fee arrangement between the prevailing party and that party's attorney, the arrangement must not control the fee award: "Were the rule otherwise, courts would find themselves as instruments of enforcement, as against third parties, of excessive fee contracts." Trustees of Cameron-Brown Investment Group v. Tavormina, 385 So.2d 728 (Fla. 3d DCA 1980); see also Kaufman & Broad Home Systems, Inc. v. Sebring Airport Authority, 366 So.2d 1230 (Fla. 2d DCA 1979); Universal Underwriters Insurance Co. v. Gorgei Enterprises, Inc., 345 So.2d 412 (Fla.2d DCA 1977). Further, in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client. Cf. Rosenberg v. Levin, 409 So.2d 1016 (Fla. 1982). Based on our review of the decisions of other jurisdictions and commentaries on the subject, we conclude that in contingent fee cases, the lodestar figure calculated by the court is entitled to enhancement by an appropriate contingency risk multiplier in the range from 1.5 to 3. When the trial court determines that success was more *464 likely than not at the outset, the multiplier should be 1.5; when the likelihood of success was approximately even at the outset, the multiplier should be 2; and, when success was unlikely at the time the case was initiated, the multiplier should be in the range of 2.5 and 3.
The "results obtained" may provide an independent basis for reducing the fee when the party prevails on a claim or claims for relief, but is unsuccessful on other unrelated claims. When a party prevails on only a portion of the claims made in the litigation, the trial judge must evaluate the relationship between the successful and unsuccessful claims and determine whether the investigation and prosecution of the successful claims can be separated from the unsuccessful claims. In adjusting the fee based upon the success of the litigation, the court should indicate that it has considered the relationship between the amount of the fee awarded and the extent of success.
Id. at 1151. Rowe further requires that in determining the hourly rate, the number of hours reasonably expended and the appropriateness of any reduction or enhancement factor applied, the trial court must set forth specific findings, stating grounds for any adjustment of the lodestar up or down. Id.
We think the trial court here failed fully to apply the principle of Rowe, and the order respecting the amount of the attorney's fee award fails to lay out how the court reached the fee. On remand determination must be made in accordance with the lodestar approach as embellished in Rowe.
LETTS and STONE, JJ., concur.