966 F.2d 1442
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
v.
Anne Richardson JONES, Executrix of the Estate of Hassel L.
Richardson, Plaintiff-Appellant,
DURHAM LIFE INSURANCE COMPANY, Defendant-Appellee.
 No. 90-2488.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 5, 1992
Decided: July 2, 1992
 
 Appeal from the United States District Court for the Western District of Virginia, at Danville. Jackson L. Kiser, District Judge. (CA-89-80-D)
 Argued: Gary L. Bengston, Gary L. Bengston, P.C., Danville, Virginia, for Appellant.
 William DeLaney Bayliss, Williams, Mullen, Christian & Dobbins, Richmond, Virginia, for Appellee.
 On Brief: Dana D. McDaniel, Glen A. Lea, Williams, Mullen, Christian & Dobbins, Richmond, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before WIDENER and HAMILTON, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 HAMILTON, Circuit Judge:
 
 
 1
 The appellant, Anne Richardson Jones, executrix of the estate of Hassel L. Richardson, appeals from the judgment of the district court, entered on a jury verdict, finding that appellee/defendant Durham Life Insurance Company (Durham) did not breach its contract of health and life insurance with Hassel L. Richardson.[1] Appellant also appeals the district court's refusal to grant a motion for a new trial on the basis that the jury was improperly instructed. Three issues are raised on appeal: (1) Did the district court err in not granting Richardson a directed verdict at the close of evidence because the evidence indisputably showed that Durham was fully apprised of his medical condition and waived its right to deny coverage on that basis? (2) Did the district court err in failing to give requested jury charges? and (3) Did the district court improperly instruct the jury on the issue of damages? As set forth below, we affirm the judgment of the district court.
 
 
 2
 * Factual and Procedural Background
 
 
 3
 On April 15, 1988, Hassel L. Richardson suffered a seizure while fishing in his backyard. He shook violently, passed out, and was taken to a local hospital. Richardson was admitted to the hospital that day and remained hospitalized until the following day, April 16. At the hospital, Richardson was examined by two physicians, Dr. Eddie Mercado, his regular doctor, and Dr. Albino Kuon, a neurologist. Various tests were performed upon Richardson during his hospitalization, including a brain scan and an electroencephalogram. Richardson was specifically told that he had suffered a seizure and such seizure possibly resulted from a cerebral stroke. Dilantin, an anti-seizure medication was prescribed. Richardson was specifically advised to limit his activities. For instance, he was advised not to drive an automobile or to swim because of the possibility that the seizure activity could reoccur. Richardson was also advised to schedule additional neurological testing for the following week, but he never returned for a follow-up examination. At the time of his hospitalization, Richardson was thirty-three years old and had never purchased health insurance.
 
 
 4
 On April 25, ten days after the incident, Richardson and his sister Judy Jarvis met with Durham's agent Rick Remley. A group health insurance application was completed for Jarvis. A second application was begun for Richardson.
 
 
 5
 The events surrounding completion of Richardson's application were the subject of conflicting testimony. Richardson testified that he told Remley that he had suffered a violent shaking of the body, passed out, went to the hospital where he was admitted overnight, received treatment, needed further testing, and was taking Dilantin. Some of this testimony conflicted with earlier deposition testimony given by Richardson. Some of this testimony was confirmed and some was contradicted by Jarvis.
 
 
 6
 Remley testified that Richardson told him that the incident was nothing and that he had simply fainted. Remley contended that Richardson did not state that the doctors had described the incident as a "seizure." Remley also testified that Richardson denied any use of medication with respect to the April 15 incident and did not reveal he was, at that time, taking Dilantin to control seizure activity. Richardson testified that he disclosed to Remley that the doctors stated that he had possibly suffered a stroke. Remley testified that when he asked Richardson if he meant heat stroke, Richardson responded affirmatively.
 
 
 7
 Not in dispute are the written answers on the April 25, 1988, application. Question two on the application asked about treatment or confinement in a hospital. The answer "yes" is checked, but the explanation below the yes/no question states: "Heat stroke (minor) no problems," shows a same-day discharge from the hospital, and responded "no" to the question "Hospital confined?" Each of these answers was indisputably false in that Richardson had been confined to the hospital overnight, the doctors had not diagnosed heat stroke, the doctors had called the problem serious, requested further testing, and suggested that Richardson limit his activities. Question six asked if any medication was being taken and the answer given is "no." Richardson was on Dilantin at the time he gave this answer on the application form. He signed the application, thereby acknowledging that he had read the application and that the answers were true and correct.
 
 
 8
 The April 25 application was never processed for reasons not apparent in the record. A second application was completed on July 25, 1988, with the same false answers, except the additional phrase "No treatment necessary" was added to the explanation of Richardson's hospital stay. This second application was filled out by Remley based on the information contained in the original application. Remley took the July 25 application to Richardson's office to sign, but did not specifically recall going over the application with Richardson or asking for an update on Richardson's health. Richardson signed the July 25 application.
 
 
 9
 Based on the information in the July 25 application, Richardson was issued a certificate of group health and life insurance effective September 1, 1988. His coverage was initially terminated in October 1988, when Richardson refused to pay the premium for mandatory life insurance coverage under the plan. After he complained to the Florida insurance authorities, the coverage was reinstated in May 1989 upon payment of all premiums then due.
 
 
 10
 On May 10, 1989, and June 5, 1989, Richardson submitted his first claims under the health insurance policy. The claim form in each case identified the problem as seizures and gave an onset date of April 1988. Additional claims were subsequently filed for a seizure disorder. The filing of these claims triggered an investigation by Durham into the specific medical records of Richardson's hospital admission in April 1988.
 
 
 11
 While this investigation was proceeding, Durham sent out new policy forms containing amendments to the policy originally issued to Richardson. The amendments deleted some coverages (maternity) and modified others effective July 1, 1989. None of the changes were material to the decision to terminate Richardson's coverage.
 
 
 12
 Following receipt and review of the April 1988 medical records, Durham rescinded Richardson's policy on October 4, 1989, and refunded all premiums. The stated ground for the rescission was the false statements on the July 25, 1988 application.
 
 
 13
 Richardson received treatment for seizures at the Medical College of Virginia (MCV) beginning in approximately June 1989. Medication did not stop the problem and a brain biopsy was scheduled for November 1989. The biopsy/surgery at MCV was postponed because of the rescission of Richardson's insurance and his inability to pay for the treatment. Because he was a veteran, however, the same surgery, with the same doctors, was scheduled at a Veteran's Administration hospital. The biopsy, performed in early January 1990, revealed a low-grade malignant tumor. Subsequent surgery later that month resulted in removal of the tumor. At the time of surgery, the tumor was classified as a high-grade tumor. Richardson underwent radiation treatment. Following surgery, prognosis for Richardson's survival ranged from one to ten years. Richardson died January 26, 1992.
 
 
 14
 This lawsuit was filed December 18, 1989. After a two-day jury trial on July 16-17, 1990, the jury returned a special verdict for Durham. Richardson's motion to set aside the verdict was denied. A subsequent motion for a new trial or to amend the judgment was denied by written order filed September 24, 1990. This appeal followed.
 
 II
 
 15
 Resolution of the issues present in this case turns initially upon the question of what law applies to the case. The parties, at trial and before this court, have stipulated that Florida law governs. They disagree, however, as to the requirements of Florida law. Plaintiff asserts that Florida common law, which requires as an element of proof actual fraud in the application process to avoid insurance coverage, should apply in this case. See Metropolitan Life Ins Co. v. Fugate, 313 F.2d 788, 792 (5th Cir. 1963); World Service Life Ins. Co. v. Bodiford, 492 So. 2d 457 (Fla. Dist. Ct. App. 1, 1986). Durham argues that Fla. Stat. Ann. § 627.409 applies, which allows an insurer to avoid coverage for material misrepresentations on an application regardless of whether the applicant made the misstatement intentionally or unintentionally. See Continental Assurance Co. v. Carroll, 485 So. 2d 406 (Fla. 1986).
 
 
 16
 Resolution of this issue is significant because the instructions given to the jury by the district court are premised upon the statute, not the common law. The instructions as given by the district court did not require the jury to find a specific intent to defraud on the part of Richardson. As discussed below, there was certainly evidence that would have supported a finding of fraudulent intent, but there is no way to assess whether or not the jury would have so found if instructed on the issue. The instruction made no distinction between intentional and unintentional misrepresentations.[2]
 
 
 17
 Durham is a North Carolina resident. At the time of application, Richardson was a Florida resident. He completed his application in Florida. The insurance policyholder was not Richardson, however. The policyholder was a trustee bank in Alabama and a copy of the actual policy of insurance was delivered to that trustee bank. Only a certificate of group insurance was issued and delivered to Richardson in Florida.
 
 
 18
 The district court instruction, supra, note 2, appropriately summarizes the standard set forth in Fla. Stat. Ann § 627.409(1)(b) & (c) governing misrepresentations in insurance applications. As interpreted by the Florida courts, these statutory sections allow an insurance company to disclaim coverage based on any misrepresentation in an insurance application, if material to the risk insured, and if the insurer would not have issued the policy if the true facts were known, regardless of whether the applicant made the misstatement intentionally or unintentionally. Continental Assurance Co., 485 So.2d at 409.
 
 
 19
 Richardson argues that § 627.409 is not applicable to the group policy and certificate in this case, and that the common law should apply. The statute is contained in Part II of Chapter 627 of the Florida Code. While the provisions of Part II are generally applicable to all types of insurance contracts, Fla. St. Ann. § 627.401(2) specifically states that Part II's provisions do not apply to"Policies or contracts not issued for delivery in this state nor delivered in this state, except as otherwise provided in this code." Id.
 
 
 20
 A certificate of group insurance was delivered to Richardson in Florida. Richardson argues that delivery of the certificate in Florida does not make § 627.409 applicable to the group policy in this case because § 627.402(2) specifically excludes group health certificates from the definition of "policy" in § 627.401(2). Section 627.402 states:
 
 
 21
 (1) "Policy" means a written contract of or written agreement for or effecting insurance, or the certificate thereof, by whatever name called, and includes all clauses, riders, endorsements, and papers which are a part thereof.
 
 
 22
 (2) The word "certificate" as used in this section does not include certificates as to group life or health insurance or as to group annuities issued to individual insureds.
 
 
 23
 Id. As interpreted by the Florida appellate courts, this provision, when coupled with § 627.401, makes the provisions of Part II, including § 627.409, inapplicable to the types of group insurance listed in § 627.402(2) where only a certificate, and not the policy itself, is delivered in the state of Florida. See East Coast Insurance Company v. Cooper, 415 So.2d 1323, 1325 (Fla. Dist. Ct. App. 3, 1982); Albury v. The Equitable Life Assurance Society of the U.S., 409 So.2d 235, 236 (Fla. Dist. Ct. App. 1, 1982); Blue Cross of Florida v. Turner, 363 So.2d 133, 134 (Fla. Dist. Ct. App. 1, 1978). The case cited by Durham applying § 627.409 to a group health insurance plan, Conger Life Ins. Co. v. McCawley, 452 So.2d 596 (Fla. Dist. Ct. App. 5), rev. denied, 458 So.2d 271 (Fla. 1984) is of no value, because the policy in that case was delivered in Florida; therefore, the statutory exclusion was inoperative.
 
 
 24
 Though neither was raised by Durham, there are two possible means by which the district court's charge with respect to liability may be affirmed. In Aperm of Florida, Inc. v. Trans-Coastal Maintenance Company, 505 So.2d 459 (Fla. Dist. Ct. App. 4, 1987), rev. denied, 515 So.2d 229 (Fla. 1987), the court, relying on East Coast Insurance Company v. Cooper, 415 So.2d 1323 (Fla. Dist. Ct. App. 3, 1982), set forth a theory of "constructive delivery" to make the provisions of Part II of Chapter 627 applicable to an insurance contract, particularly the provision at § 627.428 allowing recovery of attorney's fees to prevailing plaintiffs, where the contract was issued for delivery and delivered outside the state of Florida. In Aperm, the insurance contract, on its face, showed that it was "issued for delivery" to Columbia, South Carolina, and was actually "delivered" there. The Aperm court held, however, that this did not preclude application of Part II under § 627.401(2) because where "the policy was written to cover risks that would occur in Florida, then it will be assumed the policy was issued for delivery in Florida." Aperm, 505 So.2d at 462.
 
 
 25
 In this case, the policy clearly contemplated coverage of risks in Florida, since coverage was offered and sold to Florida residents through Florida brokers. Applying Aperm, it may be assumed, therefore, that the policy was "issued for delivery in Florida," and the exclusion of § 627.401 is inapplicable, makings 627.409 fully applicable in this case.[3]
 
 
 26
 The second basis for affirming the district court is by applying the explicit terms of the group health policy and certificate and the Florida law governing such policies. On its face, the certificate of insurance issued to Richardson states, "THE BENEFITS OF THE POLICY PROVIDING YOUR COVERAGE ARE GOVERNED PRIMARILY BY THE LAW OF A STATE OTHER THAN FLORIDA." JA 646. This statement is specifically required by Fla. St. Ann. § 627.6515(2), which provides that Part VII of Chapter 627 of the Florida insurance laws governing group, blanket, and franchise health insurance policies does not apply to certain policies. By their terms, the certificate of insurance, the policy, and Florida law specifically contemplate that the law of the state in which the policy, not the certificate, was issued will govern: in this case, Alabama.
 
 
 27
 The applicable Alabama statute governing group health insurance policies delivered in that state, Ala. St. Ann.s 27-14-7, is worded almost identically to Fla. St. Ann. § 627.409 and has been interpreted to allow an insurer to avoid coverage for misrepresentations, regardless of the good or bad faith of the insured. State Farm Fire and Casualty Company v. Oliver, 658 F. Supp. 1546 (N.D.Ala. 1987), aff'd, 854 F.2d 416 (11th Cir. 1988). The jury instruction on liability adequately states Alabama law on the subject, the law which the policy, the certificate, and Florida law anticipate will apply.
 
 
 28
 Application of Alabama law with respect to the issue of liability is not inconsistent with the stipulation of the parties that Florida law applies. Florida law, particularly § 627.6515, indicates that the law of the state where the master policy was delivered should apply under the circumstances applying to this case. See Lumbermans Mutual Casualty Co. v. Ceballos, 440 So.2d 612, 613 (Fla. Dist. Ct. App. 3, 1983)("It is well settled in Florida that the statute in effect at the time the insurance contract is executed governs any issues arising under that contract."). The certificate of insurance evidencing Richardson's coverage under the policy conforms with the provisions of § 627.6515 and plainly indicates that Florida substantive law should not govern the contract. To allow the parties to stipulate that Florida substantive law should apply would be to ignore Florida statutory law and the express provisions of the certificate. Cf. Windward Traders v. Fred S. James & Co. of New York, Inc., 855 F.2d 814, 819 (11th Cir. 1988) (stipulation of parties as to place of delivery and issue that does not comport with actual facts cannot defeat application of Florida law to insurance contract).
 
 III
 
 29
 Having established the applicable law, we proceed to the specific issues raised by appellant. Richardson contends that the district court should have granted the motion for a directed verdict at the close of evidence. Plaintiff's argument proceeds as follows: (1) Durham is charged, at law, with all knowledge possessed by its agent Remley; (2) Remley was fully apprised of Richardson's medical condition at the time of the April 25 application; (3) Durham had a duty to investigate information on the application to verify its accuracy; (4) Durham did not investigate further, but chose to issue a policy; and (5) Durham, therefore, waived the right to raise Richardson's false answers on the application as a ground for rescinding the insurance contract and denying coverage.
 
 
 30
 Plaintiff's argument is without merit. Point one above correctly states Florida law. See ITT Life Ins. Corp. v. Hernandez, 651 F. Supp. 1408, 1409 (S.D.Fla. 1987). The argument flounders on the second, third, and fourth points, however. There was a substantial factual dispute as to what Richardson did or did not tell Remley at the time the applications were completed. Taking the evidence in a light most favorable to Durham as the non-moving party on the motion for a directed verdict, the evidence shows that Richardson withheld or misstated his medical condition. At best, Durham, through Remley, knew that Richardson had fainted in his backyard, had recovered, went to the hospital emergency room by choice, was told he had suffered a heat stroke and required no further treatment or medication from the time of the incident until July 25, 1988, the date of the second application. Durham did not know that plaintiff had been told he had a possible stroke in the brain area, had suffered a seizure, was scheduled, but failed to appear, for further testing, was taking Dilantin, an antiseizure drug, and was advised to restrict his activities such as driving because he might suffer additional seizures.
 
 
 31
 There is more than sufficient evidence to show that Richardson's representations to Remley were false, that they were material to the risk, and that Durham would not have issued a policy if the true facts were known.[4] There was, therefore, no error in denying Richardson's motion for a directed verdict. The question of what Durham knew or did not know was plainly a jury question, which the jury resolved adversely to Richardson.
 
 
 32
 The third prong of plaintiff's argument does not change this conclusion. Plaintiff argues that Remley at least knew, as of April 25, that Richardson had fainted and gone to the hospital. Plaintiff argues that based on this knowledge, Durham had a duty to investigate and would have discovered the true nature of his illness if a proper investigation had been conducted. Because it did not investigate, but issued a policy, plaintiff contends Durham waived a misrepresentation defense.
 
 
 33
 The cases on which plaintiff relies are easily distinguishable. In each, the court held that where an insurer actually began an investigation, it was bound to follow that investigation to its reasonable conclusion or waive any defense based on misrepresentation. See, e.g., Columbian Nat. Life Ins. Co. v. Lanigan, 19 So.2d 67 (Fla. 1944). An insurer has the right to rely on the representations made by an insured in the application. Talley v. National Standard Life Insurance Co., 178 So.2d 624 (Fla. Dist. Ct. App. 2, 1965) (applying actual fraud standard); Shelby Life Insurance Co. v. Paolasini, 489 So.2d 89 (Fla. Dist. Ct. App. 3, 1986) (applying § 627.409).
 
 IV
 
 34
 On the motion for new trial, plaintiff argued that the district court erred in failing to give certain requested jury instructions. Each contention is discussed in turn.
 
 
 35
 * Plaintiff argues that the following instruction should have been given:
 
 
 36
 Rick Remley acted as an Agent for Durham Life Insurance. If he had knowledge of such facts as would put a reasonably prudent insurance salesman or company upon inquiry and prompt them to pursue the inquiry and acquire knowledge, then Durham Life is prohibited from claiming that Richardson did not properly fill out the application for insurance, and you should find for Richardson.
 
 
 37
 JA 32.
 
 
 38
 As the district court noted in denying plaintiff's motion for a new trial, the instruction does not accurately state Florida law. The cases which plaintiff cites to support the instruction all hinge on the fact, not present in this case, that the insurance company specifically conducted an independent inquiry into the truthfulness of the answers given in an application for insurance or was given specific notice that further inquiry was necessary because the insured, in good faith, did not know the true nature of his illness. See Lanigan, 19 So.2d. at 71. The instruction proposed by plaintiff absolves plaintiff of all duty to tell the truth and all right of the insurer to rely on the truthfulness of the answers given. This is clearly not the law. See Talley v. National Standard Life Ins. Co., 178 So.2d 624, 625 (Fla. Dist. Ct. App. 2, 1965); Swift v. North American Co. for Life and Health Insurance, 677 F. Supp. 1145 (S.D.Fla. 1987), aff'd, 838 F.2d 1120 (11th Cir. 1988).
 
 
 39
 This conclusion is not affected by whether § 627.409 applies to this case. See Talley, 178 So.2d at 625 (applying common law). The district court's conclusion that the proposed instruction was improper in this case, even if predicated on the applicability of § 627.409, was nonetheless correct.
 
 B
 
 40
 Plaintiff also claims that the following instruction should have been given:
 
 
 41
 If Hassel Richardson fully advised Rick Remley at the time the original application was filled out about the incident on April 15, 1988 and Remley wrote the answers incorrectly or contrary to the facts stated by Richardson, Durham Life is prohibited from canceling the insurance policy because of incorrect answers on the application.
 
 
 42
 JA 30. In denying the motion for a new trial, the district court held that the proposed instruction was substantially the same as the instruction actually given:
 
 
 43
 [T]he plaintiff Richardson ... is entitled to recover in this case unless one of two things occurred.
 
 
 44
 First, Richardson was bound to disclose to Durham all material information called for on the application and if he failed to do so in his discussion with Rick Remley, he cannot recover, or, if he disclosed material information to Remley and knew that Remley was not properly recording the information on the application form, he cannot recover.
 
 
 45
 JA 407.
 
 
 46
 Plaintiff argues that the statement that all material information must be disclosed to Durham rather than Remley might have misled the jury. This contention is without merit. The district court specifically instructed the jury that an agent can bind a principal. As Durham points out, the proposed instruction is incomplete because Richardson was under a duty to fully disclose his medical condition to Remley, including his medication, overnight hospitalization, diagnosis of stroke and seizures, need for further tests, and restriction on activities. His duty to disclose was not limited to a simple recounting of his fainting and visit to the hospital.
 
 V
 
 47
 Because we conclude that the jury was adequately instructed with respect to liability in this case and that resolution of the liability question was properly an issue for the jury, we need not reach plaintiff's assignments of error with respect to the instructions on damages. Since the jury determined there was no liability in the first instance, any alleged error in the instructions with respect to damages was not prejudicial. For the reasons set forth above, the order of the district court entering judgment on a jury verdict in favor of Durham Life Insurance Company is affirmed.
 
 AFFIRMED
 
 
 [1]
 On January 26, 1992, the original appellant and plaintiff in the district court, Hassel L. Richardson, died while the appeal was pending. By order dated March 3, 1992, his mother, as executrix of his estate, was substituted as appellant in this matter
 
 
 [2]
 On the question of liability, the district court instructed the jury as follows:
 Now in this case the plaintiff Richardson is claiming certain damages under the insurance policy, and he is entitled to recover under that policy unless one of two things occurred.
 First, Richardson was bound to disclose to Durham, the insurance company, all material information called for on the application, and if he failed to do so in his discussion with Durham's agent, Rick
 Remley, then he cannot recover....
 Now the information form, regarding the nature of Richardson's illness on April 15, 1988 and his stay in the hospital, the length of his stay in the hospital, his course of treatment, and his medication were material facts.
 Joint Appendix (JA) p. 427.
 
 
 [3]
 We note that Fla. Stat. Ann.s 627.6515(4) requires that an insurer deliver a copy of the master policy and certificate to the Florida Department of Insurance before solicitation may begin. This could constitute a delivery within the state as contemplated by § 627.401. Cf. East Coast Ins. Co., 415 So.2d at 1325 (Where state law required delivery to insured in Florida, but policy actually delivered in New York, policy presumed to be "issued for delivery."). This would, however, render § 627.401 virtually meaningless since delivery of a copy of the policy to insurance officials prior to solicitation would occur in almost every situation, regardless of the type of insurance
 
 
 [4]
 Assuming that Florida common law should have been applied rather than § 627.409, the evidence was also sufficient to support a finding that Richardson intentionally misstated his medical condition, though the jury was not specifically charged on this issue