MARICULTURE PRODUCTS LTD. *v.* THOSE
CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON INDIVIDUALLY SUB-
SCRIBING TO CERTIFICATE
NO. 1395/91 ET AL.
(AC 23194)

Flynn, West and DiPentima, Js.

Argued January 6—officially released August 31, 2004

*James T. Hargrove*, with whom were *Leonard H. Freiman, Steven D. Ecker* and, on the brief, *James T. Cowdery* and *James R. Smart*, for the appellants-appellees (named defendants).

*James D. Poliquin*, pro hac vice, with whom were *Robert J. Sickinger* and, on the brief, *John W. Cannavino*, for the appellee-appellant (plaintiff).

*Opinion*

DiPENTIMA, J. In this protracted insurance claim dispute that arose after Hurricane Bob hit the coast of Maine in 1991, we are asked to interpret and apply Maine insurance law. The defendants, Those Certain Underwriters at Lloyd's of London Individually Subscribing to Certificate No. 1395/91,[1] appeal from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Mariculture Products Ltd.[2] On appeal, the defendants claim that the trial court (1) improperly denied their motions for a directed verdict and for judgment notwithstanding the verdict, both premised on the issue of release, and improperly instructed the jury not to consider either their related settlement with Key Bank of Maine (Key Bank) or their $150,000 payment to Key Bank as a result of the settlement, (2) failed to set off against the verdict the $150,000 payment to Key Bank and improperly instructed the jury not to consider the issue of setoff, and (3) failed to render judgment as a matter of law against the plaintiff on its claim under § 2436 of title 24-A of the Maine Revised Statutes and improperly instructed the jury to consider that claim.

The plaintiff cross appeals, claiming that the court improperly (1) determined that the interest required under § 2436 should be simple rather than compound, (2) decided not to instruct the jury on the meaning of

---

[1] The original complaint also named as a defendant Aquacultural Insurance Service Ltd., a broker for Those Certain Underwriters at Lloyd's of London Individually Subscribing to Certificate No. 1395/91. The plaintiff later withdrew its action against Aquacultural Insurance Service Ltd. We therefore refer in this opinion to Those Certain Underwriters at Lloyd's of London Individually Subscribing to Certificate No. 1395/91 as the defendants.

[2] The action was filed by the plaintiff in Connecticut, where its corporate headquarters is located and its sole stockholder resides. The parties stipulated that Maine law would apply to issues involving interpretation of the subject insurance contract, including notice of claim, proof of loss and terms and conditions of the contract.

"reserving any appropriate defenses" in response to the jury's question regarding how that language should be interpreted and (3) denied the plaintiff's motion for a directed verdict on its claims under Maine's Unfair Settlement Practices Act, Me. Rev. Stat. Ann. tit. 24-A, § 2436-A (West 2000). We affirm in part and reverse in part the judgment of the trial court.

The following facts are relevant both to the defendants' appeal and the plaintiff's cross appeal. The plaintiff owned and operated fish hatcheries at three separate locations in Maine. Gershon G. Navon served both as the president and sole shareholder of the plaintiff and its parent corporation, Mariculture Products Corporation. The plaintiff's inventory of fish at each of its hatcheries was insured by the subject insurance policy that was issued by the defendants. The policy covered fish that were lost due to death, destruction or escape.

The property insurance policy also included a clause naming Key Bank as a loss payee.[3] Key Bank had loaned to the plaintiff a total of $9 million to finance the establishment of the plaintiff's business. Key Bank initially loaned to the plaintiff $5 million for construction of the hatcheries and sites. This loan was disbursed in three installments from 1988 through 1991. Key Bank loaned an additional $4 million to the plaintiff in 1992. That loan was equally divided between a working capital loan and a term loan. The working capital funds operated as a revolving line of credit.

The plaintiff entered into a series of security agreements with Key Bank to secure the loans. The plaintiff's machinery, cages and other assets related to the construction of the hatchery facilities served as

---

[3] The loss payee clause provides: "It is hereby noted and agreed that in the event of claim or claims attaching under this policy, such claim or claims are payable to: Key Bank, 286 Water Street, Augusta, ME 04330."

collateral for the $5 million construction loan. The revolving line of credit associated with the $2 million of working capital was secured by the plaintiff's inventory of fish.

The plaintiff sustained a significant loss of fish at its Frenchboro farm on August, 19, 1991, as a result of Hurricane Bob. On March 3, 1992, the plaintiff submitted a formal claim to the defendants specifying losses of $744,070.[4] The plaintiff later reduced this claim to $729,672. On April 2, 1992, the defendants denied the claim by letter, stating that the claim was "excessive" and providing no further explanation.

Meanwhile, between January and March, 1992, the plaintiff was engaged in negotiations with Key Bank regarding its inability to make its loan payments. Key Bank had sent a written notice of default and acceleration to the plaintiff on February 27, 1992, outlining various defaults allegedly committed by the plaintiff. During the course of these negotiations, on March 17, 1992, Key Bank physically seized the plaintiff's assets.

On May 26, 1993, allegedly on behalf of the plaintiff, Key Bank submitted a proof of loss form to the defendants, claiming $150,000 in losses. This proof of loss form purported to release the defendants from all further claims by the plaintiff. Subsequently, the defendants paid $150,000 to Key Bank pursuant to a settlement between the defendants and Key Bank.

On February 9, 1998, the plaintiff filed the underlying action against the defendants, seeking to recover damages for an alleged breach of the insurance contract. The complaint sounded in breach of contract and violations of the late payment and unfair claims settlement

---

[4] Navon considered as a formal claim his letter of January 17, 1992, submitted to Frederick R. Plant of Plant Adjustment Bureau Ltd. In that letter, Navon accounted for a total of 100,727 missing fish. The insurance policy named Plant Adjustment Bureau Ltd. as a loss reporting data contact.

practices provisions of the Maine Insurance Code. Following trial, the jury returned a verdict in favor of the plaintiff on its breach of contract and late payment claims, awarding damages of $445,000. The jury returned a verdict in favor of the defendants on the unfair claims settlement practices claim. The court awarded the plaintiff attorney's fees of $487,194 and interest of $768,515. This appeal and cross appeal followed. Additional facts will be set forth as necessary.

## I

## APPEAL

## A

The defendants first claim that the court improperly denied their motions for a directed verdict and for judgment notwithstanding the verdict as to their contention that they had been released from any obligation to the plaintiff pursuant to the security agreements existing between the plaintiff and Key Bank. They also contend that the court improperly instructed the jury not to consider the settlement reached between the defendants and Key Bank or the amount paid to Key Bank under that settlement.[5] Specifically, the defendants contend that (1) the proof of loss submitted to them by Key Bank discharged them from liability for all future claims by the plaintiff, (2) the payment to Key Bank by the defendants was authorized by the plaintiff and (3) Key Bank's status as a loss payee was fixed as of the date of the loss.

The following additional facts are relevant to the resolution of the defendants' claim. The plaintiff and

[5] The court charged in relevant part: "Now, during the course of this trial, you have heard evidence of the defendants' settlement of the insurance loss claim with Key Bank. You are instructed [that] you are not to consider any release given by Key Bank to the defendants in determining the issues in this case. You may not reduce any damages you may find in this case by the $150,000 paid to Key Bank by the defendants."

Key Bank executed a security agreement on October 9, 1991, approximately two months after the date of the loss. This security agreement specifically covered the fish located at the Frenchboro farm. The agreement also contained a clause granting Key Bank the authority to act as the plaintiff's attorney in fact. On the basis of those provisions, the defendants claim that their payment to Key Bank released them from any obligations they may have had to the plaintiff, as Key Bank was the designated loss payee under the subject insurance contract and had the authority to act on behalf of the plaintiff under the security agreement.

The court instructed the jury not to consider the issue of release, reasoning that § 2425[6] of title 24-A of the Maine Revised Statutes had been triggered by the plaintiff and was, therefore, applicable to the case. The court stated that "[§ 2425] has been put into full force and effect by exhibit eighty-six, a letter addressed to Fred Plant, Jr., of Plant Adjustment Bureau, signed by Mr. Gershon G. Navon, dated June 3, 1992 before the $150,000 payment was made by the insurance company to Key Bank."[7] The court also denied the defendants'

---

[6] Section 2425 of title 24-A of the Maine Revised Statutes provides: "Whenever the proceeds of or payments under an insurance policy or annuity contract heretofore or hereafter issued become payable in accordance with the terms of such policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment thereof in accordance therewith or in accordance with any written assignment thereof, the person then designated as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor, and such payments shall fully discharge the insurer from all claims under the policy or contract *unless*, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that such other person claims to be entitled to such payment or some interest in the policy or contract." (Emphasis added.)

[7] The letter stated in pertinent part: "Any settlement of this claim between [Aquacultural Insurance Service Ltd., a broker for the defendants] and any other party, including Key Bank of Maine . . . without [the plaintiff's] prior consent will not constitute a settlement of this claim and will not release [Aquacultural Insurance Service Ltd.] of its obligations. . . . Any payment made on this insurance claim other than to [the plaintiff] will not relieve [Aquacultural Insurance Service Ltd.] of its obligations."

motions for a directed verdict and for judgment notwithstanding the verdict, both of which were based on the argument of release.[8]

1

The defendants first argue that the court improperly denied their motions for a directed verdict and for judgment notwithstanding the verdict as to their contention that they had been released from any obligation to the plaintiff pursuant to the security agreements existing between the plaintiff and Key Bank. We disagree.

The standards of review applicable to the defendants' claim are well settled.[9] We review a trial court's decision on a motion for a directed verdict under an abuse of discretion standard. *Moran* v. *Eastern Equipment Sales, Inc.*, 76 Conn. App. 137, 144, 818 A.2d 848 (2003). "A trial court should direct a verdict for a defendant if, viewing the evidence in the light most favorable to the plaintiff, a jury could not reasonably and legally reach any other conclusion than that the defendant is entitled to prevail. . . . The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be given in favor of its correctness." (Citation omitted; internal quotation marks omitted.) Id., 143–44.

A similar standard applies in reviewing a court's decision on a motion for judgment notwithstanding the verdict. "Appellate review of a trial court's refusal to render

---

[8] The defendants submitted the following motions, all of which were denied: a motion for a directed verdict, filed October 16, 2001; a motion for judgment notwithstanding the verdict, filed December 10, 2001; and a motion to set aside the verdict and for a new trial, filed December 10, 2001. On June 4, 2002, the court denied all three motions in a memorandum of decision.

[9] Although the parties stipulated that Maine law would apply to issues involving the interpretation of the subject insurance contract, "we follow the law of Connecticut on procedural issues such as the appropriate standard of appellate review." *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 807 n.13, 830 A.2d 752 (2003).

judgment notwithstanding the verdict occurs within carefully defined parameters. We must consider the evidence, and all inferences that may be drawn from the evidence, in a light most favorable to the party that was successful at trial. . . . This standard of review extends deference to the judgment of the judge and the jury who were present to evaluate witnesses and testimony. . . . Judgment notwithstanding the verdict should be granted only if we find that the jurors could not reasonably and legally have reached the conclusion that they did reach." (Internal quotation marks omitted.) *Parker* v. *Slosberg*, 73 Conn. App. 254, 263, 808 A.2d 351 (2002).

We turn first to the defendants' argument that the proof of loss submitted by Key Bank discharged the defendants from all future liability to the plaintiff. The defendants argue that § 2425 is inapplicable to the facts of this case because the statute applies only to those situations in which the entity claiming entitlement to an insurance payment is not an actual party to the insurance contract. They contend, therefore, that the "some other person" language of § 2425 cannot include an insured or a loss payee because they are both parties to the policy. Moreover, the defendants assert that § 2425 is inapplicable because the rights of Key Bank as a loss payee were fixed as of the date of loss and not as of the time the defendants paid Key Bank.

In response, the plaintiff claims that § 2425 expressly provides that an assignee claiming entitlement to an insurance payment cannot discharge an insurer if the insurer has received notice prior to payment that another person claims entitlement to such payment. Consequently, the plaintiff argues that Key Bank could not discharge the defendants from their obligations to the plaintiff under the insurance contract because the plaintiff provided written notice to the defendants prior to the time of payment to Key Bank. The plaintiff claims

that § 2425 is intended to limit the circumstances under which an assignee can discharge an insurer and that the plain language of the statute includes the named insured within the definition of "some other person . . . ." Me. Rev. Stat. Ann. tit. 24-A, § 2425 (West 2000). We agree with the plaintiff.

The defendants' claim presents us with the task of statutory interpretation. Statutory interpretation is a matter of law and, therefore, under both our law and Maine law, our review is plenary. See *Nastro* v. *D'Onofrio*, 76 Conn. App. 814, 818, 822 A.2d 286 (2003); see also *Kimball* v. *Land Use Regulation Commission*, 745 A.2d 387, 392 (Me. 2000). We use Maine's rules of statutory interpretation in performing this task because we are interpreting Maine law. 73 Am. Jur. 2d, Statutes § 82 (2001); cf. *Nettles* v. *Walcott*, 107 F.2d 738, 741 (2d Cir. 1939) (judicial decisions of state whose statutes are being interpreted are final as to meaning of statutes of that state).

"We look first to the plain meaning of the statutory language as a means of effecting the legislative intent." (Internal quotation marks omitted.) *Kimball* v. *Land Use Regulation Commission*, supra, 745 A.2d 392. "If the meaning of the language is plain, we must interpret the statute to mean exactly what it says." (Internal quotation marks omitted.) *In re Christopher J.*, 505 A.2d 795, 800 (Me. 1986), cert. denied sub nom. *Coombs* v. *Dept. of Human Services*, 480 U.S. 917, 107 S. Ct. 1372, 94 L. Ed. 2d 687 (1987). "Where the statutory language is ambiguous, we examine other indicia of legislative intent, such as legislative history. The statutory scheme from which the language arises must be interpreted to achieve a harmonious outcome. We will not construe statutory language to effect absurd, illogical, or inconsistent results." (Internal quotation marks omitted.) *Kimball* v. *Land Use Regulation Commission*, supra, 392. Moreover, "[n]othing in a statute may

be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible." (Internal quotation marks omitted.) *Struck* v. *Hackett*, 668 A.2d 411, 417 (Me. 1995), cert. denied sub nom. *Struck* v. *Kennebec County*, 517 U.S. 1168, 116 S. Ct. 1568, 134 L. Ed. 2d 667 (1996).

The defendants argue that § 2425 cannot apply to situations in which the *insured* is claiming some entitlement to an insurance payment because the rights of the plaintiff as the insured and Key Bank as the loss payee were fixed as of the time of loss. The plain language of the statute, however, does not support such an interpretation. "[W]ords in a statute must be given their plain and ordinary meanings . . . and, without an *express inclusion of a limiting adverb* such as 'solely,' we refuse to imply such a restriction." (Citation omitted; emphasis added.) *Eagle Rental, Inc.* v. *Waterville*, 632 A.2d 130, 131 (Me. 1993). The Maine legislature did not choose to include any limiting language in conjunction with the phrase "some other person . . . ." Me. Rev. Stat. Ann. tit. 24-A, § 2425 (West 2000). We therefore interpret that language as including any party who claims either entitlement to an insurance payment or an interest in an insurance policy. To interpret § 2425 as specifically excluding the insured would be to thwart the law of statutory interpretation as it exists in the state of Maine. If the legislature intended to limit the application of § 2425 to certain parties, it would have included language to achieve such a result. See *Eagle Rental, Inc.* v. *Waterville*, supra, 131.

It is clear that § 2425 was in fact triggered by the plaintiff in this case. It is a general rule that when an insurer makes a payment of insurance proceeds to the proper recipient, such payment discharges the insurer from any future liability under the policy. See Me. Rev. Stat. Ann. tit. 24-A, § 2425 (West 2000); see also *Bigley* v. *Pacific Standard Life Ins. Co.*, 229 Conn. 459, 462,

642 A.2d 4 (1994); *Alfa Life Ins. Corp.* v. *Culverhouse*, 729 So. 2d 325, 329 (Ala. 1999). In conformity with § 2425, the plaintiff provided written notice to the defendants at their home office, advising them of its interest in the subject insurance policy before the defendants paid Key Bank. Once the defendants were in possession of this letter, the defendants could not then pay Key Bank and expect to be discharged from any obligation they may have had to the plaintiff. See Me. Rev. Stat. Ann. tit. 24-A, § 2425 (West 2000); see also *Alfa Life Ins. Corp.* v. *Culverhouse*, supra, 328–29; *Usable Life* v. *Fow*, 820 S.W.2d 453, 455 (Ark. 1991); *Cooper* v. *United Benefit Life Ins. Co.*, 17 Cal. App. 3d 911, 915–16, 95 Cal. Rptr. 320 (1971); *Morein* v. *North American Co. for Life & Health Ins.*, 271 So. 2d 308, 314 (La. App. 1972), writ denied, 273 So. 2d 845 (La. 1973); *Miller* v. *Paul Revere Life Ins. Co.*, 81 Wash. 2d 302, 311–12, 501 P.2d 1063 (1972) (en banc). Regardless of whether any obligation to the plaintiff existed, the defendants' disregard of § 2425 precludes the purported release from being an issue in this case.

We conclude that the court did not improperly deny the defendants' motions for a directed verdict or for judgment notwithstanding the verdict. The defendants paid no heed to § 2425 and cannot now claim that they were released from any obligation they may have owed to the plaintiff, regardless of Key Bank's security interest in the lost fish or Key Bank's status as a loss payee under the subject insurance policy. Accordingly, we conclude that the court did not abuse its discretion in finding that the defendants were not released from their obligations to the plaintiff by virtue of § 2425 and that, therefore, the jury properly was kept from considering any release given to the defendants by Key Bank.

2

The defendants next argue that the court improperly instructed the jury not to consider the issue of release

and, consequently, the aforementioned settlement reached between the defendants and Key Bank or the amount paid to Key Bank under this settlement. See footnote 5. We disagree.

"The standard of review concerning claims of error in jury instructions is well settled. . . . We must review the charge as a whole to determine whether it was correct in law and [whether it] sufficiently guided the jury on the issues presented at trial. . . . [T]he trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *Fenner* v. *Hartford Courant Co.*, 77 Conn. App. 185, 193, 822 A.2d 982 (2003).

We already have determined that the court did not abuse its discretion in finding that the defendants were not released from their obligations to the plaintiff due to their noncompliance with § 2425 and, therefore, that the jury properly was precluded from considering the issue of release. Accordingly, in reviewing the jury charge in its entirety, we conclude that the court provided the jury with sufficient guidance in reaching a correct verdict.[10]

---

[10] Because we conclude that the applicability of § 2425 of the Maine Revised Statutes is dispositive of the defendants' first claim, we need not address the defendants' remaining two arguments.

Nevertheless, we pause to note that there was insufficient evidence at trial to support the defendants' second argument that their payment to Key Bank under the settlement was authorized by the plaintiff pursuant to the security agreements existing between the plaintiff and Key Bank. "[T]he court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding." (Internal quotation marks omitted.) *Gerstenzang* v. *Glenville News & Florist, Inc.*, 71 Conn. App. 531, 534, 802 A.2d 230 (2002). The defendants did not enter into evidence the security agreements in effect at the time of the loss. The only security agreement presented to the trial court was dated October 9, 1991, which date was approximately two months after the date of the loss. Although the October security agreement specifically refers to agreements entered into by the plaintiff with Key Bank prior to the date of the loss, the court would have had no way of ascertaining the scope or content of these past agreements.

## B

As we have decided that the defendants' payment to Key Bank did not release them from their obligations to the plaintiff under the subject insurance policy, we must now consider their claim that the court improperly refused to set off their payment to Key Bank and should have charged the jury to consider the issue of setoff. The defendants contend that contrary to the plaintiff's position, they were not required to plead setoff pursuant to General Statutes § 52-139 and Practice Book § 10-54 because they actually were seeking a credit, rather than a setoff, against the amount of their liability to the plaintiff to the extent of the payment of the prior settlements. They argue that a credit is necessary in this case to prevent double recovery by the plaintiff.

As a preliminary matter, we decline to review the defendants' claim that the court improperly refused to set off their payment to Key Bank against the verdict in favor of the plaintiff. Although the record does provide us with the court's charge to the jury not to reduce any damages by the $150,000 the defendants paid to Key Bank, the defendants have not provided us with an adequate record from which we could ascertain the court's reasoning for refusing to apply setoff to the verdict. See *Silvermine Investors, LLC* v. *Call Center Technologies, Inc.*, 81 Conn. App. 701, 709–10, 841 A.2d 695 (2004) (due to inadequate record, court declined to review defendant's claim because decision would be entirely speculative without necessary factual and legal conclusions).

Accordingly, we address only the defendants' claim that the court improperly instructed the jury not to consider the issue of setoff.[11] "The standard of review

The court, therefore, had no evidence before it on which to present the issue to the jury.

[11] See footnote 5.

concerning claims of error in jury instructions is well settled. . . . We must review the charge as a whole to determine whether it was correct in law and [whether it] sufficiently guided the jury on the issues presented at trial. . . . [T]he trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *Fenner* v. *Hartford Courant Co.*, supra, 77 Conn. App. 193.

We agree with the defendants that they are in fact seeking a credit rather than a setoff. General Statutes § 52-139 and Practice Book § 10-54 furnish our rules for pleading the right of setoff.[12] "Setoff is the right to cancel or offset mutual debts or cross demands . . . . The concept of setoff allows [parties] that owe each other money to apply their mutual debts against each other, thus avoiding the absurdity of making A pay B when B in fact owes A." (Citation omitted; internal quotation marks omitted.) *Shapero* v. *Mercede*, 77 Conn. App. 497, 509, 823 A.2d 1263 (2003). "A set-off is made where the defendant has a debt against the plaintiff arising out of a transaction independent of the contract on which the plaintiff sues, and desires to avail himself of that debt, in the existing suit, either to reduce the plaintiff's recovery, or to defeat it altogether, and, as the case may be, to recover a judgment in his own favor for a balance." (Internal quotation marks omitted.) *Bank of Boston Connecticut* v. *Avon Meadow Associates*, 40 Conn. App. 536, 541, 671 A.2d 1310, cert. denied, 237 Conn. 905, 674 A.2d 1329 (1996).

[12] We apply Connecticut law to the claim because it involves procedural issues of pleading. See *Skyler Ltd. Partnership* v. *S.P. Douthett & Co.*, 18 Conn. App. 245, 250, 557 A.2d 927 (our statutes, rules of practice set forth procedural scheme), cert. denied, 212 Conn. 802, 560 A.2d 984 (1989); see also *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, 22 Conn. App. 640, 650, 579 A.2d 545 (general rule that forum state applies own procedure), cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990); 1 Restatement (Second), Conflict of Laws § 128 (1971).

"To constitute mutuality, the debts must be due to and from the same persons in the same capacity. . . . Mutual debts . . . are cross debts in the same capacity and right and of the same kind and quality." (Citations omitted; internal quotation marks omitted.) *Lippitt* v. *Thames Loan & Trust Co.*, 88 Conn. 185, 199, 90 A. 369 (1914); see also *Gallicchio Bros., Inc.* v. *C & S Oil Co.*, 191 Conn. 104, 108–109 n.4, 463 A.2d 600 (1983). Setoff may be employed only when a defendant requests that the court set off a judgment against a debt owed to the defendant by the plaintiff. See *225 Associates* v. *Connecticut Housing Finance Authority*, 65 Conn. App. 112, 122, 782 A.2d 189 (2001). "It is the defendant's burden to demonstrate its right of setoff by affirmatively and adequately alleging such a claim in the pleadings." *Elis* v. *Rogers*, 15 Conn. App. 362, 365, 544 A.2d 663 (1988). In this case, the plaintiff did not owe a debt to the defendants, nor did the defendants make such a contention. The absence of mutual debts, therefore, makes setoff inapplicable to this case.

We now turn to the merits of the defendants' argument. The defendants rely on *United Technologies Corp.* v. *American Home Assurance Co.*, 237 F. Sup. 2d 168 (D. Conn. 2001), in arguing that they were entitled to a credit for the $150,000 they paid to Key Bank. The court in *United Technologies Corp.* held that Connecticut law governing setoff did not apply because "[t]he nature of the reduction sought . . . is not the existence of a debt due and owing [the defendant] from the plaintiff . . . . Properly characterized, [the defendant] is seeking a credit against the amount of its liability to the extent the payment of prior settlements would result in double recovery to [the plaintiff] for the covered costs . . . ." (Citation omitted; internal quotation marks omitted.) Id., 171.

Unlike the situation in *United Technologies Corp.*, the possibility of double recovery is lacking in this case.

The potential for double recovery was present in *United Technologies Corp.* because the plaintiff already had been paid by other insurance carriers under different types of policies. Id.; see also *Imbrogno* v. *Chamberlin*, 89 F.3d 87, 89 (2d Cir. 1996) (under Connecticut law, setoff had no applicability in seeking reduction in jury verdict to account for prior settlement); *Shapero* v. *Mercede*, supra, 77 Conn. App. 509 (retainer payment not squarely subject of setoff because it was not cross demand for payment of debt). We already have determined that the payment made to Key Bank by the defendants did not release them from their obligations to the plaintiff. In fact, Key Bank's status as a loss payee under the insurance policy is irrelevant in this case due to the applicability of § 2425 and the defendants' disregard of that statute. The plaintiff has yet to recover from the defendants because the latter's payment to Key Bank was unauthorized under § 2425.

The defendants argue that their payment to Key Bank was proper and benefited the plaintiff in that the payment reduced the plaintiff's ultimate liability to Key Bank. Key Bank, however, seized the plaintiff's assets on March 17, 1992, and the defendants did not pay the $150,000 at issue until 1993. We have no way of knowing from the record before us whether the plaintiff owed any further debt to Key Bank after March 17, 1992, and, therefore, whether Key Bank was entitled to the $150,000 payment at the time it was made. Additionally, in refusing to allow the jury to consider setoff, the court found that "it is the defendants' obligation to offer—[to] point to some evidence in this case to show that there was some evidence as to an indebtedness that Key Bank was due by the plaintiff at the time of settlement. . . . [T]here is no such evidence in this case, no evidence for the jury to be able to consider."

On the basis of the foregoing analysis, we conclude that it was not improper for the court to instruct the jury not to consider the issue of setoff.

## C

The defendants' final claim is that the court improperly denied their motions for a directed verdict and for judgment notwithstanding the verdict as to the plaintiff's claim under § 2436,[13] Maine's late payment statute. We agree with the defendants.

The following additional facts are relevant to the defendants' claim. The plaintiff's corporate office was located in Greenwich, Connecticut. The subject insurance policy was prepared in London, then manually delivered to Navon at the plaintiff's corporate office in Greenwich. On the basis of the fact that the policy was delivered to Navon in Connecticut, the defendants submitted various motions[14] seeking judgment as a mat-

[13] Section 2436 of title 24-A of the Maine Revised Statutes provides: "1. A claim for payment of benefits under a policy of insurance against loss delivered or issued for delivery within this State is payable within 30 days after proof of loss is received by the insurer and ascertainment of the loss is made either by written agreement between the insurer and the insured or by filing with the insured of an award by arbitrators as provided for in the policy, and a claim which is neither disputed nor paid within 30 days is overdue, provided that if during the 30 days the insurer, in writing, notifies the insured that reasonable additional information is required, the undisputed claim shall not be overdue until 30 days following receipt by the insurer of the additional required information; except that the time period applicable to a standard fire policy and to that portion of a policy providing a combination of coverages, as described in section 3003, insuring against the peril of fire shall be 60 days, as provided in section 3002.

"2. An insurer may dispute a claim by furnishing to the insured, or his representative, a written statement that the claim is disputed with a statement of the grounds upon which it is disputed.

"3. If an insurer fails to pay an undisputed claim or any undisputed part of the claim when due, the amount of the overdue claim or part of the claim shall bear interest at the rate of 1 1/2% per month after the due date.

"4. A reasonable attorneys fee for advising and representing a claimant on an overdue claim or action for an overdue claim shall be paid by the insurer if overdue benefits are recovered in an action against the insurer or if overdue benefits are paid after receipt of notice of the attorney's representation.

"5. Nothing in this section prohibits or limits any claim or action for a claim which the claimant has against the insurer."

[14] See footnote 8.

ter of law on the plaintiff's claims under § 2436 on the ground that the policy was not issued for delivery or delivered in the state of Maine.

The court ruled that the insurance policy was delivered or issued for delivery in Maine on the basis of the fact that the language of the policy specifically covered property located in Maine. The court stated that it was irrelevant that the policy was delivered in Connecticut because the plaintiff operated four separate facilities in Maine, and the policy specifically referenced those properties. Moreover, the policy listed the plaintiff's Maine address as the insured's address and specifically covered salmon and trout cultivated by the plaintiff in Maine.

The standards of review for the defendants' claim, as set forth in part I, are well settled. We review a trial court's judgment on a motion for directed verdict under an abuse of discretion standard. *Moran* v. *Eastern Equipment Sales, Inc.*, supra, 76 Conn. App. 144. We extend deference to the court's decision on a motion for judgment notwithstanding the verdict and "consider the evidence, and all inferences that may be drawn from the evidence, in a light most favorable to the party that was successful at trial." (Internal quotation marks omitted.) *Parker* v. *Slosberg*, supra, 73 Conn. App. 263.

Specifically, the defendants argue that § 2436 is inapplicable to the policy at issue in this case because it was not delivered or issued for delivery in Maine. They contend that § 2436 is subject to § 2401[15] of title 24-A of the Maine Revised Statutes, which does not encompass

---

[15] Section 2401 of title 24-A of the Maine Revised Statutes provides: "This chapter applies as to all insurance contracts and annuity contracts, other than:

"(1) Reinsurance.

"(2) Unless otherwise specifically indicated, policies or contracts not issued for delivery nor delivered in this State; and

"(3) Wet marine and transportation insurance."

insurance policies that are not delivered or issued for delivery in Maine. Moreover, the defendants point out that the language of § 2436 explicitly includes the requirement that a policy be delivered or issued for delivery in Maine. In response, the plaintiff maintains that the policy at issue in this case, because it is a property insurance contract, is governed by § 3001 of title 24-A of the Maine Revised Statutes rather than by § 2401. We agree with the defendants and, accordingly, conclude the court should have dismissed the plaintiff's claim under § 2436.[16]

Section 2436 (1) provides in relevant part that a "claim for payment of benefits under a policy of insurance . . . *delivered or issued for delivery within this State* is payable within 30 days after proof of loss is received by the insurer . . . ." (Emphasis added.) Me. Rev. Stat. Ann. tit. 24-A, § 2436 (1) (West 2000). Section 2436 allows for an award of interest and reasonable attorney's fees in favor of the insured if the insurer violates the statute. The statute is, therefore, penal in nature and must be strictly construed. *Burne* v. *John Hancock Mutual Life Ins. Co.*, 403 A.2d 775, 777 (Me. 1979); see also *Marquis* v. *Farm Family Mutual Ins. Co.*, 628 A.2d 644, 651 (Me. 1993).

Section 3001 serves as the scope provision for chapter 41 of the Maine Revised Statutes, which regulates property insurance contracts. Section 3001 applies to "contracts of property insurance covering subjects located in this State"; Me. Rev. Stat. Ann. tit. 24-A, § 3001 (West 2000); and makes no mention of a delivery requirement. Section 3001 cross references chapter 27 of the Maine Revised Statutes and provides in relevant part that "all

---

[16] The defendants maintain that § 2436 of the Maine Revised Statutes also is inapplicable because an ascertainment of the loss was not made as required by the statute. Our conclusion as to the delivery requirement of § 2436 is dispositive of the claim, and, accordingly, we do not reach the defendants' second argument concerning ascertainment of loss.

contracts of property insurance covering subjects located in this State are subject to . . . the applicable provisions of chapter 27 . . . ." Section 2401, meanwhile, is the scope provision of chapter 27, which governs insurance contracts generally. Section 2436 is contained within chapter 27. Section 2401 (2) provides that chapter 27 applies only to those insurance and annuity contracts delivered or issued for delivery in Maine.

Although it is true that § 3001 is the scope provision for property insurance contracts such as the one involved in these appeals and contains no reference to a delivery requirement, we cannot ignore the plain language of § 2436. See *In re Christopher J.*, supra, 505 A.2d 800. Section 3001 makes a cross reference to chapter 27, yet qualifies the application of chapter 27 to property insurance contracts by stating in relevant part that "[a]ll contracts . . . covering subjects located in this State are subject to . . . the *applicable* provisions of chapter 27 . . . ." (Emphasis added.) Me. Rev. Stat. Ann. tit. 24-A, § 3001 (West 2000). Section 2436 is explicitly limited in application by its own words to those insurance contracts delivered or issued for delivery in Maine. "[N]othing in a statute may be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible." (Internal quotation marks omitted.) *Struck* v. *Hackett*, supra, 668 A.2d 417. Indeed, the plaintiff's position that the delivery requirement of § 2436 is inapplicable to property insurance contracts by virtue of § 3001 would render the delivery requirement of § 2436 as surplusage.

Moreover, we must strictly construe § 2436 due to its penal nature. See *Burne* v. *John Hancock Mutual Life Ins. Co.*, supra, 403 A.2d 777. "In the construction of a penal statute, legislative intent must prevail and be given effect." *State* v. *Williams*, 433 A.2d 765, 768 (Me. 1981). Statutes must be interpreted "to avoid

absurd, illogical, or inconsistent results." *Dept. of Human Services* v. *Hager*, 756 A.2d 489, 493 (Me. 2000). We therefore agree with the defendants that § 2436 is inapplicable to the policy at issue in this appeal because it was neither delivered nor issued for delivery in Maine.[17]

We emphasize that we are not holding that § 2401 is the applicable scope provision for property insurance contracts in general. Section 3001 is unequivocally the applicable scope provision for such contracts as provided by the Maine Insurance Code. We hold *only* that because § 2436 explicitly requires that a policy be "delivered or issued for delivery" in Maine, it does not apply to the property insurance policy here.

We now turn to the plaintiff's alternative argument that, even if the delivery requirement is applicable, the subject policy was issued for delivery in Maine. The

[17] We note the seemingly conflicting standards of §§ 2436 and 3001 of the Maine Revised Statutes. The only criteria imposed by § 3001 for the applicability of the Maine Insurance Code to property insurance contracts is that the contract cover subjects located within the state of Maine. Section 3001 explicitly cross references chapter 27, indicating that the Maine legislature intended to make the provisions of chapter 27 applicable to property insurance contracts, provided that the terms of § 3001 were satisfied. The delivery requirement of § 2436, however, appears to contradict the clear intent of § 3001 in the property insurance context.

Maine courts have consistently held that "[t]he statutory scheme from which the language arises must be interpreted to achieve a harmonious outcome. We will not construe statutory language to effect absurd, illogical, or inconsistent results." *Kimball* v. *Land Use Regulation Commission*, supra, 745 A.2d 392. As previously noted, however, it appears inconsistent that in the context of § 2436, property insurance contracts would be governed by conflicting standards. Moreover, it seems illogical that property located in Maine, owned by a Maine corporation and covered by a policy that specifically references Maine property and lists as the insured's location a Maine address would not be governed by Maine law, especially when § 3001 specifically provides that contracts insuring subjects located in Maine are to be governed by the Maine Insurance Code. Notwithstanding those observations, we are constrained by the language of § 2436 and must conclude that the delivery requirement applies to this property insurance policy.

plaintiff cites the fact that the policy listed as the named insured a Maine corporation with a Maine address. Consequently, the plaintiff contends that the policy "was 'issued for delivery' in the state of Maine within the meaning of § 2401 even if it was anticipated that the policy would actually be handed over to Mr. Navon while he was in Connecticut." We disagree.

It has been widely held that an insurance contract is governed by the law of the place where it was made. 2 G. Couch, Insurance (3d Ed. 1995) § 24:4, pp. 24-8–24-9. In determining where the contract was made for purposes of ascertaining the applicable law, courts have considered where the contract was issued; id.; and, in some circumstances, where it was delivered. Id., § 24:8, pp. 24-15–24-16. "The delivery of the insurance policy to the insured is sometimes the controlling factor, even though the policy may have been issued in another jurisdiction or is payable elsewhere. Accordingly, it has been held that where a contract of insurance is executed in one state and delivered in another it is a contract of the state where the policy is delivered and accepted, although the contract was written and dated in another state. . . ." 43 Am. Jur. 2d, Insurance § 325 (1982).

Although it has not considered the delivery requirement imposed by its insurance code as applied to property insurance contracts, the Supreme Judicial Court of Maine has addressed the delivery requirement in other contexts.[18] In *Security Ins. Group* v. *Emery*, 272

[18] We were unable to find Maine cases or cases from other jurisdictions specifically concerning the delivery requirement in the context of property insurance contracts. Other jurisdictions that have considered the "delivered or issued for delivery" language of their insurance statutes have held that "[t]he fact . . . that the policies were . . . actually delivered in another State is not determinative. Rather, the location of the insured and the *risk to be insured* are determinative." *American Ref-Fule Co. of Hempstead* v. *Employers Ins. Co. of Wausau*, 265 App. Div. 2d 49, 53, 705 N.Y.S.2d 67 (2000); see also *Aperm of Florida, Inc.* v. *Trans-Coastal Maintenance Co.*, 505 So. 2d 459, 462 (Fla. App.) ("if it is found that the policy was written to cover risks that would occur in Florida, then it will be assumed the policy was issued for delivery in Florida"), review denied, 515 So. 2d 229 (Fla. 1987).

A.2d 736 (Me. 1971), the plaintiff insurer argued that it was relieved of its obligations to the defendant insureds because they failed to give notice " 'as soon as practicable' " in accordance with their automobile liability insurance policy. Id., 737. The defendants countered that § 425[19] of title 24-A of the Maine Revised Statutes "reflected an overriding state policy as to notice which would supersede the contractual notice provisions even of a policy contracted for *in another state*." (Emphasis added.) Id.

The court found that "when in 1969 the Legislature completely revised the insurance law, and enacted the Maine Insurance Code, it expressly excluded any application to [p]olicies or contracts not issued for delivery in this State nor delivered in this State." (Internal quotation marks omitted.) Id. Accordingly, the court concluded that § 425 was inapplicable to the contract, which was written by a Connecticut corporation and issued to the insureds in Connecticut. Id., 738.; see also *Rockwell Burr Sign & Design Co.* v. *Gulf Ins. Co.*, United States District Court, Docket No. 02-222-P-H (D. Me. September 5, 2003), adopted by United States District Court, Docket No. 02-222-P-H (D. Me. October 3,

Nevertheless, we are bound to pay deference to those cases handed down by the Maine courts in interpreting the laws of that state. See *Nettles* v. *Walcott*, supra, 107 F.2d 741 (judicial decisions of state whose statutes are being interpreted are final as to meaning of statutes of that state).

[19] Section 425 of title 24-A of the Maine Revised Statutes was repealed and reenacted "without substantial change" as § 2904 of the Maine Revised Statutes. See *Security Ins. Group* v. *Emery*, supra, 272 A.2d 738. Section 2904 provides in relevant part: "Whenever any person, administrator, executor, guardian, recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage. . . ."

2003) (casualty policy underwritten in Connecticut, issued from Connecticut to broker in New York City and delivered in Kansas not subject to Maine Insurance Code); *Libby* v. *Transamerica Occidental Life Ins. Co.*, 737 F. Sup. 114, 116 (D. Me. 1990) (Maine conversion law, § 2809 of title 24-A of Maine Revised Statutes, inapplicable to group health insurance policy when master policy issued, delivered in Ohio).[20]

Under the rationale of those cases, the subject insurance policy was neither delivered nor issued for delivery in the state of Maine, a prerequisite for the applicability of § 2436 to the policy. The policy was prepared in London and then manually delivered to Navon at the plaintiff's corporate headquarters in Greenwich. Despite the fact that the insured corporation and insured property were located in Maine, the facts reflect that the policy was neither delivered nor issued for delivery in Maine within the meaning of the statute.

On the basis of the foregoing analysis, we conclude that the court abused its discretion in not directing a verdict in favor of the defendants on the plaintiff's claim under § 2436. Accordingly, we reverse the judgment of the court with respect to the jury's finding in favor of the plaintiff on its claim under § 2436.[21]

---

[20] Other jurisdictions have also visited this issue. "In determining the applicable substantive law in [a] diversity suit we must look to the Georgia conflict of laws rule. . . . Under Georgia law the place of the delivery of the insurance contract controls." (Citations omitted.) *Casey Enterprises, Inc.* v. *American Hardware Mutual Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981). In *Cook* v. *Herring*, 521 So. 2d 807, 810 (La. App.) writ denied, 523 So. 2d 1322 (La. 1988), the Louisiana Court of Appeals found that a liability policy had not been issued for delivery in Louisiana, even though it was prepared in that state, because it was mailed to a Mississippi agent to be delivered in Mississippi. See also *California Casualty Indemnity Exchange* v. *Pettis*, 193 Cal. App. 3d 1597, 1605, 239 Cal. Rptr. 205 (1987) (California law governed automobile liability policy issued and delivered in California by insurer incorporated and licensed in California even though motor vehicle accident occurred in Hawaii).

[21] In light of our conclusion, we need not reach the defendants' claim that the court improperly instructed the jury on that issue.

## II

## CROSS APPEAL

In its cross appeal, the plaintiff claims that the court improperly (1) determined that the interest required under § 2436 should be simple interest at the annual rate of 18 percent rather than interest compounded monthly at 1.5 percent,[22] (2) decided not to instruct the jury on the meaning of "reserving any appropriate defenses" in response to the jury's question regarding how that language should be interpreted and (3) denied the plaintiff's motion for a directed verdict on its claims under § 2436-A.

### A

The plaintiff claims that the court improperly instructed the jury on the meaning of "reserving any appropriate defenses" in response to the jury's inquiry about how to interpret that phrase in § 2436-A.[23] Specifi-

[22] Our resolution in part III renders the issue moot.

[23] Section 2436-A of title 24-A of the Maine Revised Statutes provides:

"1. Civil Actions. A person injured by any of the following actions taken by that person's own insurer may bring a civil action and recover damages, together with costs and disbursements, reasonable attorney's fees and interest on damages at the rate of 1 1/2% per month;

"A. Knowingly misrepresenting to an insured pertinent facts or policy provisions relating to coverage at issue;

"B. Failing to acknowledge and review claims, which may include payment or denial of a claim, within a reasonable time following receipt of written notice by the insurer of a claim by an insured arising under a policy;

"C. Threatening to appeal from an arbitration award in favor of an insured for the sole purpose of compelling the insured to accept a settlement less than the arbitration award;

"D. Failing to affirm or deny coverage, reserving any appropriate defenses, within a reasonable time after having completed its investigation related to a claim; or

"E. Without just cause, failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear.

"2. Without just cause. For the purposes of this section, an insurer acts without just cause if it refuses to settle claims without a reasonable basis to contest liability, the amount of any damages or the extent of any injuries claimed.

cally, the plaintiff claims that the court both improperly refused to interpret the statute for the jury and improperly instructed the jury that it was not to interpret this language. We disagree.

Our standard of review is well settled. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . We do not critically dissect a jury instruction." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 238–39, 828 A.2d 64 (2003). "Our standard of review on this claim is whether it is reasonably probable that the jury was misled." (Internal quotation marks omitted.) *Sevigny* v. *Dibble Hollow Condominium Assn., Inc.*, 76 Conn. App. 306, 311, 819 A.2d 844 (2003).

The following additional facts are relevant to our disposition of the plaintiff's cross appeal. The court instructed the jury regarding §§ 2436 and 2436-A in the same fashion, by reading each statute to the jury. After deliberating for a period of time, the jury foreperson submitted a question to the court asking how the phrase "reserve any appropriate defenses" should be interpreted as used in the following question in the special

"3. No limitation on other cause of action. Nothing in this section prohibits any other claim or cause of action a person has against an insurer.

"4. Application. This section does not apply to workers' compensation claims."

interrogatories that were submitted to the jury: "Did the defendants violate Maine's Unfair Claims Settlement Practices Statute [§ 2436-A] in either of the following ways . . . (b) Did Defendants fail to affirm or deny coverage, reserving any appropriate defenses, within a reasonable time after completed proof of loss form [was] received by the insurer?" The jury did not ask for a definition of the phrase. The court responded that "this is a clause that is contained within a statute, that it identifies and refers to a prior act. That prior act is either the act of affirming coverage or the act of denying coverage. And that it is contained within a comma. The phrase reserving any appropriate defenses is bracketed within a comma. It is conditional language." The court continued, stating that "if you have further questions on that subject, then you will give me a written question."

We conclude that the court clearly answered the jury's question regarding how the phrase was to be interpreted in the context of the special verdict form. After the court answered the question, the jury did not submit another written question before returning a verdict. This leads us to the conclusion that the jury was instructed sufficiently with respect to the phrase "reserving any appropriate defenses." We conclude that the court's instructions provided the jury with sufficient guidance in reaching the correct verdict. As a consequence, the plaintiff's argument fails.

B

The plaintiff's final claim is that the court improperly failed to direct a verdict in the plaintiff's favor on its claim of violation of Maine's unfair claims settlement practices statute, § 2436-A.[24]

Our standard of review of a trial court's denial of a directed verdict is well settled. "[Appellate] review of

[24] See footnote 21.

a trial court's refusal to direct a verdict or to render judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . A jury's verdict should be set aside only where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles. . . . A verdict should not be set aside where the jury reasonably could have based its verdict on the evidence." (Citation omitted; internal quotation marks omitted.) *Coniglio* v. *White*, 72 Conn. App. 236, 240, 804 A.2d 990 (2002).

The plaintiff sought a directed verdict on all counts of the amended complaint at the close of the evidence and filed a motion for judgment notwithstanding the verdict on the third count after the jury returned its verdict. The plaintiff argues that the court should have directed a verdict on the third count because no rational jury could have determined that, as required by § 2436-A, the defendants affirmed or denied coverage, reserving any appropriate defenses, within a reasonable time after receiving a completed proof of loss. They argue that even if the court concluded that a reasonable jury could have found that the plaintiff had not provided a completed proof of loss until March 3, 1992, that no reasonable jury could have concluded that the defendant properly affirmed or denied coverage, reserving any appropriate defenses, within a reasonable time after March 3, 1992.

Here, the defendants, via a letter to the plaintiff dated April 2, 1992, denied coverage, stating that the claim was "excessive." The defendants provided no further explanation of their denial of coverage. The defendants' letter did not create a legitimate controversy sufficient to toll the statutory time period for payment. See *LaMarche* v. *Metropolitan Life Ins. Co.*, 236 F. Sup. 50, 60 (D. Me. 2002); see also *Curtis* v. *Allstate Ins. Co.*, 787 A.2d 760, 769 (Me. 2002). The letter, however, was sufficient to allow a reasonable juror to make a determination as to whether the defendants had affirmed or denied coverage. As a consequence, the plaintiff's argument fails.

On the defendants' appeal, the judgment is reversed only as to the trial court's denial of their motion for judgment notwithstanding the verdict as to the plaintiff's claim in count two of the amended complaint, which alleged a violation of § 2436 of the Maine Revised Statutes, and the case is remanded with direction to render judgment in favor of the defendants on that count. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.