MARICULTURE PRODUCTS LTD. *v.* THOSE CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON INDIVIDUALLY SUBSCRIBING TO CER-TIFICATE NO. 1395/91 ET AL.
(AC 28206)

Gruendel, Robinson and West, Js.

Argued March 19—officially released October 7, 2008

*James T. Hargrove,* with whom were *Steven D. Ecker* and, on the brief, *James T. Cowdery,* pro hac vice, and *Leonard H. Freiman,* pro hac vice, for the appellants (named defendants).

*John W. Cannavino,* with whom, on the brief, were *James D. Poliquin,* pro hac vice, and *Rochelle Tedesco Charnin,* for the appellee (plaintiff).

ROBINSON, J. In *Mariculture Products Ltd.* v. *Certain Underwriters at Lloyd's of London,* 84 Conn. App. 688, 854 A.2d 1100, cert. denied, 272 Conn. 905, 863 A.2d 698 (2004) (*Mariculture I*), this court affirmed in part and reversed in part the judgment of the trial court. We reversed the judgment of the trial court on the claim of the defendant Underwriters at Lloyd's of London Individually Subscribing to Certificate No. 1395/91[1] that the court improperly denied their motion for judgment notwithstanding the verdict with respect to the second count of the amended complaint and remanded the case to the trial court with direction to render judgment in favor of the defendants on that count. Id., 718. We affirmed the judgment in all other aspects. Id. In this appeal, the defendants claim that on remand, the court improperly awarded the plaintiff, Mariculture Products Ltd., interest under General Statutes § 37-3a.[2] They claim that the court (1) exceeded the scope of this court's remand in *Mariculture I,* (2) incorrectly interpreted the parties' stipulation regarding interest to

[1] The original complaint also named as a defendant Aquacultural Insurance Service Ltd., a broker for Those Certain Underwriters at Lloyd's of London Individually Subscribing to Certificate No. 1395/91. The plaintiff later withdrew its action against Aquacultural Insurance Service Ltd. We therefore refer in this opinion to Those Certain Underwriters at Lloyd's of London Individually Subscribing to Certificate No. 1395/91 as the defendants.

[2] General Statutes § 37-3a provides in relevant part: "(a) Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. Judgment may be given for the recovery of taxes assessed and paid upon the loan, and the insurance upon the estate mortgaged to secure the loan, whenever the borrower has agreed in writing to pay such taxes or insurance or both. Whenever the maker of any contract is a resident of another state or the mortgage security is located in another state, any obligee or holder of such contract, residing in this state, may lawfully recover any agreed rate of interest or damages on such contract until it is fully performed, not exceeding the legal rate of interest in the state where such contract purports to have been made or such mortgage security is located."

include interest under Connecticut law, (3) rendered supplemental judgment to award interest under § 37-3a even though the necessary predicate factual findings were never made by the jury and (4) improperly applied a substantive Connecticut law when Maine law governed. We conclude that the court improperly determined that the parties' stipulation did not limit the issues of interest to Maine law and that the jury found the facts necessary for an award of interest under § 37-3a. We reverse the supplemental judgment awarding interest.[3]

The following relevant facts and procedural history were set forth in *Mariculture I.* "The plaintiff owned and operated fish hatcheries at three separate locations in Maine. Gershon G. Navon served both as the president and sole shareholder of the plaintiff and its parent corporation, Mariculture Products Corporation. The plaintiff's inventory of fish at each of its hatcheries was insured by the subject insurance policy that was issued by the defendants. The policy covered fish that were lost due to death, destruction or escape.

"The property insurance policy also included a clause naming Key Bank [of Maine (Key Bank)] as a loss payee. Key Bank had loaned to the plaintiff a total of $9 million to finance the establishment of the plaintiff's business. Key Bank initially loaned to the plaintiff $5 million for construction of the hatcheries and sites. This loan was disbursed in three installments from 1988 through 1991. Key Bank loaned an additional $4 million to the plaintiff in 1992. That loan was equally divided between a working capital loan and a term loan. The working capital funds operated as a revolving line of credit.

"The plaintiff entered into a series of security agreements with Key Bank to secure the loans. The

---

[3] Because the resolution of these issues is dispositive of the appeal, we do not reach the remaining claims.

plaintiff's machinery, cages and other assets related to the construction of the hatchery facilities served as collateral for the $5 million construction loan. The revolving line of credit associated with the $2 million of working capital was secured by the plaintiff's inventory of fish.

"The plaintiff sustained a significant loss of fish at its Frenchboro farm on August, 19, 1991, as a result of Hurricane Bob. On March 3, 1992, the plaintiff submitted a formal claim to the defendants specifying losses of $744,070. The plaintiff later reduced this claim to $729,672. On April 2, 1992, the defendants denied the claim by letter, stating that the claim was 'excessive' and providing no further explanation.

"Meanwhile, between January and March, 1992, the plaintiff was engaged in negotiations with Key Bank regarding its inability to make its loan payments. Key Bank had sent a written notice of default and acceleration to the plaintiff on February 27, 1992, outlining various defaults allegedly committed by the plaintiff. During the course of these negotiations, on March 17, 1992, Key Bank physically seized the plaintiff's assets.

"On May 26, 1993, allegedly on behalf of the plaintiff, Key Bank submitted a proof of loss form to the defendants, claiming $150,000 in losses. This proof of loss form purported to release the defendants from all further claims by the plaintiff. Subsequently, the defendants paid $150,000 to Key Bank pursuant to a settlement between the defendants and Key Bank.

"On February 9, 1998, the plaintiff filed the underlying action against the defendants, seeking to recover damages for an alleged breach of the insurance contract. The complaint sounded in breach of contract and violations of the late payment and unfair claims settlement practices provisions of the Maine Insurance Code. Following trial, the jury returned a verdict in favor of the

plaintiff on its breach of contract and late payment claims, awarding damages of $445,000. The jury returned a verdict in favor of the defendants on the unfair claims settlement practices claim. The court awarded the plaintiff attorney's fees of $487,194 and interest of $768,515." *Mariculture I*, supra, 84 Conn. App. 692–94.

"On appeal [to this court], the defendants claim[ed] that the trial court (1) improperly denied their motions for a directed verdict and for judgment notwithstanding the verdict, both premised on the issue of release, and improperly instructed the jury not to consider either their related settlement with Key Bank . . . or their $150,000 payment to Key Bank as a result of the settlement, (2) failed to set off against the verdict the $150,000 payment to Key Bank and improperly instructed the jury not to consider the issue of setoff, and (3) failed to render judgment as a matter of law against the plaintiff on its claim under § 2436 of title 24-A of the Maine Revised Statutes and improperly instructed the jury to consider that claim.

"The plaintiff cross appeal[ed], claiming that the court improperly (1) determined that the interest required under § 2436 should be simple rather than compound, (2) decided not to instruct the jury on the meaning of 'reserving any appropriate defenses' in response to the jury's question regarding how that language should be interpreted and (3) denied the plaintiff's motion for a directed verdict on its claims under Maine's Unfair Settlement Practices Act, Me. Rev. Stat. Ann. tit. 24-A, § 2436-A (West 2000)." *Mariculture I*, supra, 84 Conn. App. 691–92.[4]

[4] "Section 2436 allows for an award of interest and reasonable attorney's fees in favor of the insured if the insurer violates the statute." *Mariculture I*, supra, 84 Conn. App. 708.

We reversed the judgment only as to the trial court's denial of the defendants' motion for judgment notwithstanding the verdict as to the plaintiff's claim in count two of the amended complaint, which alleged a violation of § 2436 of the Maine Revised Statutes.[5] We remanded the case with direction to render judgment in favor of the defendants on that count. We affirmed the judgment in all other respects. Id., 718. The Supreme Court denied the plaintiff certification to appeal from our decision in *Mariculture I* on December 8, 2004.

Following our remand, the plaintiff moved, in January, 2005, for an award of prejudgment interest under § 37-3a on the damages found by the jury on the first count of the complaint and postjudgment interest. In a memorandum of decision filed August 1, 2006, the court determined that "[t]here is nothing in the transcripts submitted by counsel to suggest that either party could have reasonably believed that the issue of interest reserved to the court was limited to interest under Maine law." The court also concluded that "the answers to the special jury interrogatories dated November 2, 2001, make it clear that the defendants wrongfully withheld payment for the losses incurred by the plaintiff from April 2, 1992." The court ordered that a supplemental judgment for the award of interest under § 37-3a be entered.[6] This appeal followed.

---

[5] After the trial, the jury returned a verdict supported by answers to interrogatories, and one of its findings was that the defendants violated § 2436. According to the trial court's memorandum of decision postverdict, the parties stipulated that if a violation of § 2436 was found by the jury, an award of prejudgment interest and attorney's fees would be appropriate. The parties further stipulated that the claim for prejudgment interest and attorney's fees under § 2436, including the method of calculation and the amount, would be determined by the trial court. The court awarded interest under § 2436, and we reversed that award of interest in *Mariculture I* when we determined that § 2436 did not apply. *Mariculture I*, supra, 84 Conn. App. 710.

[6] The court, in its memorandum of decision, wrote, "[t]he issue now before the court is whether and to what extent the plaintiff is entitled to prejudgment interest pursuant to . . . § 37-3a (a) on the damages found by the jury

## I

The defendants claim on appeal that the court incorrectly interpreted the stipulation by which the parties agreed to submit the plaintiff's claim for interest under Maine law for determination by the court. Specifically, they argue that the court misconstrued their stipulation to permit a claim for interest under Connecticut law. They contend that the parties could not have contemplated or arrived at any agreement concerning interest under Connecticut law because the plaintiff's claim to interest before, during and after the trial had been under Maine law. We agree with the defendants.

"[A] stipulation of the parties is to be regarded and construed as a contract. . . . In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties. . . . We review the court's determination of the parties' intent, when the language of the stipulation is ambiguous, as we would review a factual conclusion. . . . We will uphold the court's factual findings unless those findings are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Sullivan* v. *Delisa*, 101 Conn. App. 605, 621, 923 A.2d 760, cert. denied, 283 Conn. 908, 928 A.2d 540 (2007).

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Putnam*

on the first count of the complaint," which was affirmed by this court in *Mariculture I*. "The court finds that interest at the rate of 10 percent per annum authorized by . . . § 37-3a is both reasonable and appropriate. Interest at that rate from April 2, 1992, to June 4, 2002, amounts to $452,924.66. A supplemental judgment may enter in accordance with this memorandum of decision. Postjudgment interest at the rate of 10 percent per annum will run from the date of judgment until payment."

*Park Associates* v. *Fahnestock & Co.*, 73 Conn. App. 1, 12, 807 A.2d 991 (2002).

During the original trial, the parties entered into oral stipulations regarding, among other issues, the plaintiff's claim for interest and attorney's fees. With respect to the stipulation on interest, the court, on remand, found that "[n]othing in the language of the stipulation entered into by the parties in open court suggests an intent to limit the issues reserved to the court to those arising under Maine statutory law. . . . There is nothing in the transcripts submitted by counsel to suggest that either party could have reasonably believed that the issue of interest reserved to the court was limited to interest under Maine law."

After a complete review of the record before us, we conclude that the court's finding is clearly erroneous. There is ample evidence from the record to suggest that the parties intended to limit the issue of interest to Maine law. All three of the plaintiff's claims in the amended complaint, including the claim for interest and attorney's fees, were brought under Maine law. The trial was governed by Maine law, and the record reveals that all of the parties' discussions regarding interest were within the parameters of the plaintiff's claims under Maine law. After the trial, in a memorandum of decision on the award of prejudgment interest and attorney's fees, filed June, 4, 2002, the trial court stated that "[t]he plaintiff alleged violations of various Maine statutes, and these issues were submitted to the jury. *The parties agreed that Maine law was to be applied as to the issues involving the calculation and determination of prejudgment interest as well as attorney's fees.* . . . Counsel agreed that the trial court, not the jury, would decide the amount and calculation of interest and attorney's fees. There was no reference in that counsel's agreement that Connecticut law was applicable. . . . The parties stipulated, that if such a violation [under

24-A M.R.S.A. § 2436] was found by the jury, an award of prejudgment interest and attorney's fees would be appropriate. The parties further stipulated that the claim for prejudgment interest and attorney's fees under § 2436 including the method of calculation and the amount would be determined by the trial court." (Emphasis added.) The record supports the stipulation as summarized by the trial court,[7] specifically, that neither party mentioned interest under § 37-3a or under any other state law. Therefore, the court's finding on remand that there is nothing in the transcripts to suggest that either party reasonably could have believed that the issue of interest reserved to the court was limited to interest under Maine law is clearly erroneous.

## II

The defendants also claim that the court improperly rendered supplemental judgment to award interest under § 37-3a even though the jury never made the necessary predicate factual findings. They emphasize that, at trial, the parties agreed that the jury must decide the factual underpinning to the plaintiff's claim for interest and attorney's fees, brought under Maine law. Therefore, the jury could not have found the facts directed to the specific issues necessary to adjudicate the plaintiff's claim for interest under § 37-3a. We agree with the defendants.

"A . . . court must make two determinations when awarding compensatory interest under § 37-3a: (1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated. . . . Factual findings, such as those determinations, are reviewed under the clearly erroneous standard of review. . . . A factual finding

[7] See footnote 5.

is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citations omitted; internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 31–32, 830 A.2d 240 (2003).

Here, the trial court had ruled that the factual underpinning to the plaintiff's claim for interest and attorney's fees would be decided by the jury. Consistent with the trial court's ruling, the court on remand relied on the jury's answers to the interrogatories submitted during trial. The court on remand determined that "the answers to the special jury interrogatories dated November 2, 2001, make it clear that the defendants wrongfully withheld payment for the losses incurred by the plaintiff from April 2, 1992, until the date of judgment, June 4, 2002."

In its interrogatories, the jury found that (1) the plaintiff did not violate the false and fraudulent claims clause by submitting a claim knowing that it was false or fraudulent, (2) the defendants breached the insurance contract with the plaintiff by failing to pay the plaintiff for the loss of fish, (3) the defendants breached their duty of good faith and fair dealing in their investigation, adjustment or settlement of the plaintiff's claim, (4) the plaintiff submitted a proof of loss to the defendants, (5) the defendants disputed or paid the plaintiff's claim within thirty days of receipt of the proof of loss, (6) the defendants' written statement disputing the claim was not based on a reasonable investigation and did not include sufficient detail to permit the plaintiff to understand and to respond to the defendants' position, (7) the defendants did not knowingly misrepresent pertinent facts or policy provisions relating to the coverage at issue, (8) the defendants did not fail to affirm or

deny coverage within a reasonable time after receiving the proof of loss and (9) any breach of contract by the defendants was not a proximate cause of damage to the plaintiff other than the loss of fish.

We conclude that the jury's answers to the interrogatories do not support the court's determination on remand. The interrogatories directed the jury to make specific findings on the plaintiff's claims under Maine law. The jury did not make any findings concerning § 37-3a. Specifically, the jury did not find that the defendants wrongfully withheld money from the plaintiff beginning on March 2, 1991. Therefore, the court's factual determination on remand that the jury's answers to the interrogatories set forth the requisite factual underpinning for an award of interest under § 37-3a is clearly erroneous.

The judgment is reversed as to the order of interest under General Statutes § 37-3a and the case is remanded with direction to vacate that order.

In this opinion the other judges concurred.