SILVERMINE INVESTORS, LLC *v.* CALL CENTER TECHNOLOGIES, INC.
(AC 23307)

Lavery, C. J., and Dranginis and Berdon, Js.

Argued September 18, 2003—officially released March 2, 2004

*Gregg A. Brauneisen*, for the appellant (defendant).

*Sanford D. Kaufman*, for the appellee (plaintiff).

*Opinion*

BERDON, J. In this summary process action, the defendant, Call Center Technologies, Inc., appeals from the judgment of the trial court rendered in favor of the plaintiff, Silvermine Investors, LLC. On appeal, the defendant claims that the court improperly found that (1) the notice to quit was valid, (2) it was obligated to pay the rent that was due despite the fact that there was an actual partial eviction, (3) the plaintiff was entitled to use and occupancy payments because the defendant had been evicted partially from the premises and (4) the plaintiff, if entitled to use and occupancy payments, was entitled to receive payments of only $6200 per month. We affirm the judgment of the trial court.

The following facts are not in dispute. On August 1, 2000, the defendant entered into a three year lease with the plaintiff for property that the plaintiff owned in Brookfield. The lease was for a unit, 4800 square feet in size, to be utilized as an office and warehouse. Subsequently, the parties entered into negotiations to lease a larger unit. On December 7, 2000, the parties amended the original lease. Under the terms of the amended lease, the defendant agreed to surrender the unit it was currently renting and move to the larger unit, which was 9600 square feet in size. The monthly rent for the larger unit was $6200.

The defendant did not pay the rent for January, 2002, when rent was due. On January 17, 2002, the plaintiff sent the defendant a notice stating that the rent was past due and invoked a clause in the lease charging a late fee. When the rental payment was not forthcoming, on January 29, 2002, the plaintiff caused a notice to quit possession to be served on the defendant. After the time to quit possession of the premises had passed and the defendant failed to leave, the plaintiff commenced this summary process action on the basis of nonpayment of rent.

Following a trial, the court found in favor of the plaintiff and ordered the immediate possession of the premises. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly found that the notice to quit was valid, which is a prerequisite for a court to have jurisdiction over a summary process action. "The jurisdiction of the Superior Court in summary process actions . . . is subject to a condition precedent. Before the court can entertain a summary process action and evict a tenant, the owner of the land must previously have served the tenant with

notice to quit." *Lampasona* v. *Jacobs*, 209 Conn. 724, 728, 553 A.2d 175, cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989). General Statutes § 47a-23 (a) provides in relevant part that "when a rental agreement or lease . . . terminates for . . . nonpayment of rent when due for commercial property . . . [the] owner . . . shall give notice to each lessee or occupant to quit possession or occupancy of such . . . building . . . at least three days before the termination of the rental agreement . . . or before the time specified in the notice for the lessee or occupant to quit possession or occupancy." The defendant claims that the statutory notice to quit possession was invalid because the defendant did not owe any rent when the notice was served on January 29, 2002. The defendant argues that (1) under the terms of the lease, it had until the thirtieth day of the month to pay the rent and (2) it had overpaid the rent during the previous eleven months. We disagree with both of the defendant's claims.

The following facts and procedural history are relevant to our resolution of those claims. Under the terms of the lease that the parties entered into on August 1, 2000, the rent was to be paid by the defendant on the first day of each month. Section three of the lease also states: "If said rent is not received at [the plaintiff's] office before the 15th day of each month, then, and in such event, [the plaintiff] may charge a late fee of five (5%) percent of the total amount due. The [plaintiff] shall notify the [defendant] of the fact that the payment has not been received and the [defendant] shall have ten (10) days from that date to make payment. In any event, any payment not received by the 30th of the month shall be deemed a default under this Lease."

The defendant did not pay the rent that was due on January 1, 2002. On January 17, 2002, the defendant received a certified notice from the plaintiff, indicating

that the rental payment for January had not been paid, invoking the late fee clause of the lease and demanding that the defendant pay the rent and a 5 percent late fee within ten days. When the defendant did not pay the January rent, the plaintiff had the defendant served with a notice to quit on January 29, 2002. The defendant attempted to tender payment of the January rent to the plaintiff on January 31, 2002, after being served with the statutory notice to quit on January 29, 2002, but the plaintiff refused to accept payment. The plaintiff then initiated this summary process action.

The court found that the notice to quit was not defective and that the defendant had not paid the January, 2002 rent pursuant to the terms of the lease. The court interpreted the lease to read that the defendant had ten days to pay the rent after it received notice that the rent was late, which notice the defendant received on January 17, 2002. Accordingly, the court found that the defendant was in default when it had not paid the January rent by January 27, 2002.

At the outset, we set forth our standard of review. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000). We note, however, "[w]hen there is ambiguity, we must construe contractual terms against the drafter." (Internal quotation marks omitted.) *Rund* v. *Melillo*, 63 Conn. App. 216, 222, 772 A.2d 774 (2001). We find no ambiguity and will therefore review the court's decision de novo.

A

The defendant first claims that under the terms of the lease, no rent was due until the thirtieth day of the

month. Accordingly, because the defendant was served with the statutory notice to quit on January 29, 2002, it is the defendant's contention that the notice to quit was invalid because no rent was due at that time. We disagree.

Under § 3 of the lease, entitled "Rent," the lease states in relevant part: "All rental amounts *shall be due on the first day of each and every month,* in advance, without set-off or deduction of any kind. . . ." (Emphasis added.) It is undisputed that the defendant did not pay its rent for January, 2002, by January 1, 2002, nor did the defendant pay the rent during the ten day grace period it had after the plaintiff invoked the late fee clause of the lease.

The defendant's claim that it had until the thirtieth of the month to pay the rent is based on the following language contained in § 3 of the lease: "If said rent is not received at [the plaintiff's] office by the 15th day of each month, then, and in such event, [the plaintiff] may charge a late fee of five (5%) percent of the total amount due. The [plaintiff] shall notify the [defendant] of the fact that the payment has not been received and the [defendant] shall have ten (10) days from that date to make payment. In any event, any payment not received by the 30th of the month shall be deemed a default under this Lease."

It is the defendant's contention that the last sentence of the previously quoted portion of the lease, "[i]n any event, any payment not received by the 30th of the month shall be deemed a default under this Lease," supports its position that the rent was not due until the thirtieth of the month.[1] We do not agree. The defendant

[1] It is clear that the "30th of the month" provision of § 3 of the lease provides that the defendant would be in default of the lease if the plaintiff had not received the rental payment by the thirtieth of the month without the plaintiff having to send notice that the defendant was in default.

ignores the fact that the lease also provides that the defendant would be in default if the plaintiff elected to invoke the late fee clause of the lease by sending written notice to the defendant that the rental payment was late and if the defendant failed to pay the rent within ten days from the date of that notice.

The defendant did not pay the rent that was due by the first of the month. On January 17, 2002, the plaintiff invoked the late fee clause of the lease by sending notice to the defendant that it was late in paying its rent. The defendant then had ten days from January 17, 2002 to pay the rent. On January 29, 2002, which was twelve days after the defendant received notice that it was late in paying the rent and two days after the ten day notice period had run, the plaintiff served the statutory notice to quit. We agree with the determination by the court that the notice to quit was valid.

B

The defendant next claims that the court improperly found that the notice to quit was valid because no rent was due under the amendment to the lease, as the defendant had overpaid its rent the previous eleven months. Specifically, the defendant claims that it had overpaid the rent that was due by $1600 per month since the amendment to the lease went into effect. We disagree.

The following facts are relevant to our resolution of the defendant's claim. Under the terms of the original lease, the defendant agreed to lease unit four at 559A Federal Road in Brookfield, which was 4800 square feet in size. The monthly rent for the premises was $3900, which included a common charge. The common charge was $2 per square foot, to be adjusted upward or downward depending on actual costs.[2]

---

[2] Section three of the original lease states in relevant part: "The monthly rental is $3900, per month for the first year. . . . This rental figure *includes* a 'common charge', which common charge shall be adjusted up or down

On December 7, 2000, the parties amended the lease when the defendant agreed to rent units two and three and to surrender unit four. Under the terms of the lease, the rent for units two and three, which had a total square footage of 9600 square feet, was to be $6200. The amendment was silent as to a charge for the common fee. The amendment did provide, however, that except as modified by the amendment, the terms and conditions of the original lease "shall continue in full force and effect as written."

It is the defendant's contention that the common fee was included in the monthly rental figure of $6200 for units two and three.[3] Accordingly, the defendant claims that because it had been paying $7800 per month as rent, it did not owe the plaintiff rent in January, 2002, as it had overpaid $17,600 during the previous eleven months. In support of its claim, the defendant relies on the language of the amendment to the lease: "The monthly rental is $6,200.00 per month." The defendant's interpretation of the amendment to the lease, however, fails to take into account the original lease, which still governed the parties except as modified by the amendment. Under the terms of the original lease, the defendant was required to pay a common fee in addition to the rent. There is nothing in the amendment that leads us to conclude that the defendant was no longer required to pay a common fee in addition to the rent.

---

depending on actual costs, of $2.00 per square foot, including but not limited to taxes, insurance, snow removal, landscaping and normal garbage removal. . . ." (Emphasis in original.) Although the lease called for the amount of the common fee to be adjusted depending on actual costs, the fee was never adjusted. From a review of the record, it appears that the rent for unit four was $3100 and the common fee was $800.

[3] Neither party disputes that the common fee charge was $1600 per month. The only dispute is whether that charge was included in the rental figure specified in the amendment to the lease. We recognize, however, that the $1600 figure does not reflect the amount called for in the lease, $2 per square foot.

If the plaintiff intended that the common charge be included in the rental figure, it could have so provided in the amendment to the lease.

Additionally, units two and three, encompassing 9600 square feet, are twice the size of unit four, which was 4800 square feet in size. There was testimony at trial that the parties intended that because the size of the property was going to double, the rent and common fee would also double. Under the original lease for unit four, the rent and common fee was set at $3900. Accordingly, if it were the intent of the parties to double the rent and common fee when the defendant moved to the larger facility, the rent and common fee would be $7800, the amount that the plaintiff invoiced and that the defendant paid for eleven months. Accordingly, we conclude that the court properly found that the defendant had not overpaid its rent for eleven months.

## II

The defendant next claims that the court improperly found that it was obligated to pay the rent that was due because there was an actual partial eviction due to the fact that the plaintiff had left building materials on the premises that the defendant was renting. We decline to review that claim.

In its oral decision, the court summarily dismissed the defendant's defense without any analysis, stating: "[T]here was no partial or constructive eviction." "[B]ecause the defendant failed to present an adequate record for review, [w]e . . . are left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by

us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Knutson Mortgage Corp.* v. *Bernier*, 67 Conn. App. 768, 773, 789 A.2d 528 (2002). Accordingly, because of the inadequate record before us, we decline to review the claim.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] Because we have concluded that the court properly found that the defendant was required to pay $7800 per month for the rent and common charge, we need not address the defendant's claim that the plaintiff was entitled only to $6200 per month in use and occupancy payments because $7800 was the agreed on monthly rent. The amount of use and occupancy payments is to be the last agreed on rental figure. General Statutes § 47a-26b (a). Further, we need not address the defendant's claim that the court improperly awarded any use and occupancy payments due to its actual partial eviction because, as we concluded in part II, the record as to an actual partial eviction is inadequate for us to review.

We also note that the plaintiff, pursuant to General Statutes §§ 33-920 and 33-921, claims in its brief that the defendant "may not maintain a claim against the plaintiff for money damages or for any other relief since it is a foreign corporation not qualified to do business in the state of Connecticut." "[T]he failure of a foreign corporation to obtain a certificate of authority does *not* . . . prevent it from defending any proceeding in this state." (Emphasis added.) General Statutes § 33-921 (e). The defendant never sought to maintain a claim against the plaintiff. Rather, the defendant was defending itself against a claim brought by the plaintiff. Accordingly, the plaintiff's claim that the defendant brought an action against it is without merit.