OCWEN FEDERAL BANK, FSB *v.* JOSUE
CHARLES, SR., ET AL.
(AC 23957)
(AC 24540)

Schaller, Gruendel and Harper, Js.

Argued January 3—officially released May 16, 2006

*Bridget T. Cusack*, for the appellants (defendants).

*Nathalie Feola-Guerrieri*, with whom, on the brief, was *Daniel Shepro*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. These two appeals stem from the judgment of strict foreclosure rendered in favor of the plaintiff, Ocwen Federal Bank, FSB. On appeal, the defendants, Josue Charles, Sr., and Irene Charles, claim that the trial court improperly (1) failed to enforce a settlement agreement, (2) denied their motion to open the judgment on the ground that the plaintiff had engaged in bad faith settlement practices, (3) denied their right to a trial by jury, (4) rendered summary judgment on their counterclaim and (5) precluded their expert witness from testifying. We conclude that the defendants' claims relating to the foreclosure action are moot and must be dismissed. With respect to the claims pertaining to the counterclaim, we affirm the judgment of the trial court.

A recitation of the extensive factual and procedural history is necessary.[1] In December, 1990, the defendants executed a note secured by a mortgage deed[2] in the amount of $127,100 in favor of GMAC Mortgage Corporation of Pennsylvania. The note and mortgage deed were assigned several times.[3] The plaintiff obtained the note and mortgage deed in June, 1999.

---

[1] This case has been marred by the exchange of excessive motions, resulting in an unfortunate delay of the disposition of this case.

[2] The property securing the note is located at 48 Stochrs Place in Bridgeport.

[3] The note and mortgage were transferred seven times in a nine year period.

The plaintiff commenced a foreclosure action on December 2, 1999. The defendants proceeded pro se until May 7, 2001, and did not file their answer, special defenses, counterclaim, setoff and recoupment pleading until June 21, 2001. On July 11, 2001, the plaintiff filed a motion to sever the counterclaim from the foreclosure action. This motion was denied on August 8, 2001.

On April 18, 2002, the defendants filed an amended answer, special defenses and counterclaim. The defendants asserted four special defenses consisting of unclean hands, fraud, estoppel and unconscionability. They also pleaded a six count counterclaim alleging fraudulent misrepresentation, negligent misrepresentation, innocent misrepresentation, breach of the implied duty of good faith and fair dealing, violation of 15 U.S.C. § 1692g of the Fair Debt Collection Practices Act and violation of General Statutes § 42-110b et seq. of the Connecticut Unfair Trade Practices Act.

After a certificate of closed pleadings was filed, the defendants placed the case on the jury trial list. The plaintiff responded with a motion to strike the case from the jury trial list or, in the alternative, to sever the counterclaim and permit the foreclosure action to be tried to the court separately. The court denied the plaintiff's motion on July 10, 2002, noting that "there [was] no reason to reverse the August 8, 2001 decision denying the motion to sever."

On July 22, 2002, the court issued an amended scheduling order that required the defendants to disclose their expert witnesses by August 10, 2002, and to complete their depositions by September 12, 2002. On August 22, 2002, the defendants untimely disclosed Karen Brody, a physician, as an expert witness. The plaintiff filed a motion to preclude Brody from testifying at trial because the disclosure of her as an expert wit-

ness was done outside of the time frame set forth in the amended scheduling order.[4] On September 9, 2002, the court granted the plaintiff's motion to preclude Brody as an expert witness.

On October 10, 2002, the defendants filed a motion to enforce a settlement agreement. The parties had attended a mediation before Judge Barry K. Stevens. The defendants claimed that a settlement had been articulated orally and that once it had been reduced to writing, it would be executed. The plaintiff obtained new counsel and successfully moved the court to vacate its order enforcing the settlement agreement. The basis for the plaintiff's argument was that its prior counsel lacked the authority to consummate the settlement agreement without the plaintiff's approval.

On November 4, 2002, the plaintiff again requested that the counterclaim be tried to the jury separately from the foreclosure action. The defendants objected and noted that the issue previously had been ruled on twice. The court stated that the defendants were not prepared with their exhibits and that the foreclosure action could be tried quickly. The defendants maintained their objection, but the court severed the foreclosure action from the counterclaim.

The foreclosure action was tried to the court on November 13, 2002. The court found that the plaintiff owned the note and that the defendants had defaulted on it. The court rendered judgment in favor of the plaintiff.[5] The court further found the property's value to

---

[4] The plaintiff also argued that the disclosure was insufficient because it failed to state Brody's qualifications or a sufficient basis for her opinion in violation of Practice Book § 13-4. The plaintiff then filed a supplemental motion to preclude Brody on September 6, 2002, arguing that Brody's address, as provided to the plaintiff by the defendants, was not accurate and that therefore the plaintiff had been unable to subpoena Brody.

[5] "To make out its prima facie case, [the mortgagee] had to prove by a preponderance of the evidence that it was the owner of the note and mortgage and that [the mortgagor] had defaulted on the note." *Webster Bank* v. *Flanagan*, 51 Conn. App. 733, 750–51, 725 A.2d 975 (1999).

be $164,000 and the debt to be $124,202.18. The court awarded attorney's fees in the amount of $10,000 and interest in the amount of $30,056.20 from July 1, 1999. The defendants filed a request for a special finding of facts on which the judgment had been rendered. On November 22, 2002, the court filed its findings and ordered strict foreclosure with law days beginning on April 15, 2003. On February 20, 2003, the defendants filed an appeal, designated AC 23957, from the judgment of strict foreclosure.[6]

On December 11, 2002, the plaintiff filed a motion for judgment[7] on the defendants' counterclaim. The plaintiff specifically argued that the essential allegations of the counterclaim were the same as those found in their special defenses, and therefore the doctrine of collateral estoppel precluded the defendants from prevailing. The defendants objected to the plaintiff's motion on January 24, 2003.

On May 19, 2003, the court issued its memorandum of decision. The court noted that each of the six counts of the counterclaim incorporated by reference the first

[6] On April 7, 2003, the plaintiff moved to terminate the appellate stay on the grounds that the appeal was filed solely for the purpose of delay and was frivolous. After a hearing, the trial court concluded that the defendants' appeal was frivolous and granted the motion to terminate the stay on April 28, 2003. The defendants filed a motion for review with this court, which we granted, but we denied the relief requested.

[7] The court treated this motion as one for summary judgment. "Numerous cases provide support for the proposition that a motion is to be decided on the basis of the substance of the relief sought rather than on the form or the label affixed to the motion. *In re Haley B.*, 262 Conn. 406, 412–13, 815 A.2d 113 (2003); *Zirinsky* v. *Zirinsky*, 87 Conn. App. 257, 261 n.4, 865 A.2d 488, cert. denied, 273 Conn. 916, 871 A.2d 372 (2005); *Drahan* v. *Board of Education*, 42 Conn. App. 480, 489, 680 A.2d 316, cert. denied, 239 Conn. 921, 682 A.2d 1000 (1996); *Jaser* v. *Jaser*, 37 Conn. App. 194, 202, 655 A.2d 790 (1995); *Whalen* v. *Ives*, 37 Conn. App. 7, 16–17, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995). It is the substance of a motion, therefore, that governs its outcome, rather than how it is characterized in the title given to it by the movant." *State* v. *Taylor*, 91 Conn. App. 788, 791–92, 882 A.2d 682, cert. denied, 276 Conn. 928, 889 A.2d 819 (2005).

twenty-nine paragraphs of the defendants' first special defense. The court then concluded: "[T]he issues underlying the plaintiff's complaint on the making, validity and enforcement of the note and mortgage necessarily were decided by the court upon the taking of evidence during a two day trial, from which special findings of fact were issued and judgment of strict foreclosure was entered. These issues were fully and fairly litigated in the foreclosure proceeding, and the decision on them was necessary to the judgment. In addition, the parties involved in the counterclaim were the same parties involved in the foreclosure action. Therefore, collateral estoppel applies." The court rendered judgment in favor of the plaintiff. The defendants then amended their appeal and challenged the court's decision in regard to the judgment on the counterclaim.

On June 3, 2003, the court denied the defendants' motion for an extension of time to appeal. On June 9, 2003, the defendants filed a motion to enforce a settlement agreement that they alleged had been reached on October 3, 2002, before Judge Stevens, or alternatively on May 29, 2003, during an appellate preargument conference. The defendants also filed a motion to open the judgment, to set aside the judgment, for a new trial and to enforce the settlement agreement. The court denied this motion on July 7, 2003.

Following our denial of the defendants' motion for review of the trial court's order vacating the automatic stay, the plaintiff, on July 30, 2003, filed a motion to set new law days. On August 7, 2003, the defendants filed a motion to dismiss the plaintiff's motion for new law days, arguing that they would be deprived of due process if the court set new law days while their appeal was pending. The court denied the defendants' motion to dismiss and granted the plaintiff's motion to set new

law days on August 7, 2003. The defendants filed the appeal designated AC 24540 challenging this order.[8]

On March 24, 2004, in response to the plaintiff's motion, the court opened the judgment and rescheduled the law days. The court stated: "The first law day is for the owners of the equity, March 25, 2004. In the event they do not redeem, title shall become vested in the plaintiff on March 26, 2004." Both parties, in their briefs, have indicated that the defendants relinquished the subject property to the plaintiff on January 20, 2004, and the plaintiff indicated that the title to the subject property has vested in the plaintiff after the passing of the law days. The defendants do not dispute that title to the property vested in the plaintiff following the passing of the law days.[9] Additional facts will be set forth as necessary.

I

Before we reach the merits of the defendants' appeal, we must consider whether any claims have been rendered moot as a result of the passing of the law days and the plaintiff's taking title to the subject property. The question of mootness implicates our subject matter jurisdiction. *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 125, 836 A.2d 414 (2003). Accordingly, we must address this threshold issue first.[10]

A review of the basic legal principles regarding mortgages and foreclosures will facilitate our discussion. "Connecticut follows the 'title theory' of mortgages, which provides that on the execution of a mortgage on

[8] On April 23, 2004, we granted the defendants' motion to consolidate their two pending appeals, AC 23957 and AC 24540.

[9] In their brief to this court, the defendants conceded that they relinquished the property to the plaintiff voluntarily and that the plaintiff has taken title.

[10] We requested that the parties be prepared to discuss the mootness issue at oral argument.

real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property. . . . As the holder of equitable title, also called the equity of redemption, the mortgagor has the right to redeem the legal title on the performance of certain conditions contained within the mortgage instrument. . . . The mortgagor continues to be regarded as the owner of the property during the term of the mortgage." (Citations omitted.) *Sargent* v. *Smith*, 78 Conn. App. 691, 695–96, 828 A.2d 620 (2003), rev'd on other grounds, 272 Conn. 722, 865 A.2d 1129 (2005); see also *Ferrigno* v. *Cromwell Development Associates*, 244 Conn. 189, 201 n.10, 708 A.2d 1371 (1998). "The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage, the most important of which is usually the payment of money. General Statutes § 47-36h . . . ." (Citations omitted.) *Barclays Bank of New York* v. *Ivler*, 20 Conn. App. 163, 166, 565 A.2d 252, cert. denied, 213 Conn. 809, 568 A.2d 792 (1989).

"Generally, foreclosure means to cut off the equity of redemption, the equitable owner's right to redeem the property. . . . The equity of redemption can be cut off either by sale or by strict foreclosure. . . . In Connecticut, strict foreclosure is the rule, foreclosure by sale the exception. A decree of strict foreclosure finds the amount due under the mortgage, orders its payment within a designated time and *provides that should such payment not be made, the debtor's right and equity of redemption will be forever barred and foreclosed. Most significantly, the effect of strict foreclosure is to vest title to the real property absolutely in the mortgagee and to do so without any sale of the property.* A judgment of strict foreclosure, when it becomes absolute and all rights of redemption are cut off, constitutes an appropriation of the mortgaged property to satisfy the mortgage debt." (Citations omitted;

emphasis added; internal quotation marks omitted.) *National City Mortgage Co.* v. *Stoecker*, 92 Conn. App. 787, 793, 888 A.2d 95, cert. denied, 277 Conn. 925, 895 A.2d 799 (2006); see *Farmers & Mechanics Bank* v. *Kneller*, 40 Conn. App. 115, 124, 670 A.2d 324 (1996).

In *Barclays Bank of New York* v. *Ivler*, supra, 20 Conn. App. 163, the defendant mortgagor appealed from the denial of his motion to open a stipulated judgment of strict foreclosure. Id., 164. In that case, this court stated: "The question this court must address . . . is whether the law days have run so as to extinguish the defendant's equity of redemption and vest title absolutely in the plaintiff. If this has occurred, no practical relief [could] follow from a determination of the merits of this case . . . ." (Citation omitted; internal quotation marks omitted.) Id., 167. We concluded that because the law days had run and title had vested absolutely in the plaintiff, the defendant's appeal was moot. Id. We explained that "it is not within the power of appellate courts to resuscitate the mortgagor's right of redemption or otherwise to disturb the absolute title of the redeeming encumbrancer." Id., 166–67; see also *Provident Bank* v. *Lewitt*, 84 Conn. App. 204, 210, 852 A.2d 852, cert. denied, 271 Conn. 924, 859 A.2d 580 (2004); *First National Bank of Chicago* v. *Luecken*, 66 Conn. App. 606, 612, 785 A.2d 1148 (2001), cert. denied, 259 Conn. 915, 792 A.2d 851 (2002); compare *Brooklyn Savings Bank* v. *Frimberger*, 29 Conn. App. 628, 631, 617 A.2d 462 (1992). Simply put, once title has vested absolutely in the mortgagee, the mortgagor's interest in the property is extinguished and cannot be revived by a reviewing court. See *Barclays Bank of New York* v. *Ivler*, supra, 166–67.

In the present case, several of the issues presented by the defendants pertain to the foreclosure action. Essentially, the remedy sought by the defendants, with regard to the issues pertaining to the foreclosure action,

is the restoration of their interest in the property, the equity of redemption. Because the law days have run and title absolutely has vested in the plaintiff, we cannot grant the defendants the relief they seek.

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but, also throughout the pendency of the appeal. . . . *When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot.*" (Emphasis added; internal quotation marks omitted.) *Giaimo* v. *New Haven,* 257 Conn. 481, 492–93, 778 A.2d 33 (2001); see also *Connecticut Coalition Against Millstone* v. *Rocque,* supra, 267 Conn. 125–26; *Segal* v. *Segal,* 264 Conn. 498, 505, 823 A.2d 1208 (2003); *Chase Manhattan Mortgage Corp.* v. *Burton,* 81 Conn. App. 662, 664, 841 A.2d 248, cert. denied, 268 Conn. 919, 847 A.2d 313 (2004).

The defendants' first claim on appeal is that the court improperly failed to enforce a settlement agreement. All of the settlement discussions between the parties required that the note be secured by the defendants' interest in the subject property. That interest has been extinguished and cannot be reinstated. Accordingly, we cannot afford the defendants the practical relief sought because the terms contained in the proposed settlement agreement can no longer be effectuated. We therefore dismiss this portion of the appeal.

The second claim presented by the defendants is that the court improperly denied their motion to open the

judgment because the plaintiff engaged in bad faith settlement practices, and that the court failed to grant attorney's fees and damages. As to the settlement practices, we dismiss that portion of the defendants' appeal as moot. To the extent that the defendants seek attorney's fees and damages as a sanction for the plaintiff's alleged bad faith settlement practices, this claim remains viable.

The third claim set forth by the defendants is that the court improperly denied their right to a trial by jury. Specifically, the defendants argue that it was improper for the court to sever the foreclosure action from the counterclaim after there had been two prior orders in the case denying such a request. Despite the defendants' characterization of this as a constitutional claim of the denial of the right to a jury trial,[11] we are not persuaded.

We note that the plaintiff brought a foreclosure action. "Such actions are equitable in nature and, therefore, do not give rise to a right to a jury trial under article first, § 19, of the Connecticut constitution." *669 Atlantic Street Associates* v. *Atlantic-Rockland Stamford Associates*, 43 Conn. App. 113, 129, 682 A.2d 572, cert. denied, 239 Conn. 949, 950, 686 A.2d 126 (1996). The defendants were not entitled to a jury trial on the foreclosure action. The court's decision to sever the equitable foreclosure action from the legal counterclaim is not of constitutional dimension, but properly is characterized as a claim involving the law of the case

---

[11] "The constitution of Connecticut, article first, § 19, provides that [t]he right of trial by jury shall remain inviolate. That provision guarantees the right to a jury trial in all cases for which such a right existed at the time of the adoption of that constitutional provision in 1818. . . . The seventh amendment to the United States constitution, which is binding upon only the federal courts . . . also provides that [i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." (Citations omitted; internal quotation marks omitted.) *L & R Realty* v. *Connecticut National Bank*, 246 Conn. 1, 9, 715 A.2d 748 (1998).

doctrine.[12] Even if we assume arguendo that the court improperly violated this doctrine and severed the actions, the only practical remedy, that is, a jury trial on the foreclosure action, is not available because title to the subject property has vested in the plaintiff. We therefore dismiss this portion of the defendants' appeal as moot.

The fourth claim raised on appeal by the defendants is that the court improperly rendered summary judgment on the defendants' counterclaim. Because this claim does not pertain to the foreclosure action, it is not moot.

The final claim presented by the defendants is that the court improperly precluded the defendants' expert witness from testifying. To the extent that this claim involves the foreclosure action, it is moot for the reasons previously stated.

## II

The defendants claim that the court improperly denied their motion to open the judgment because the plaintiff engaged in bad faith settlement practices. Specifically, the defendants argue that the court failed to award attorney's fees and punitive damages. We decline

---

[12] "Underlying the law of the case doctrine is the view that [a] judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . The doctrine provides that [w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Citation omitted; internal quotation marks omitted.) *Wasko* v. *Manella*, 87 Conn. App. 390, 395, 865 A.2d 1223 (2005). Nevertheless, "[a] judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." (Internal quotation marks omitted.) *Bridgeport* v. *Triple 9 of Broad Street, Inc.*, 87 Conn. App. 735, 741, 867 A.2d 851 (2005).

to review this claim on the ground that the record is inadequate.

The following additional facts are necessary for our resolution of the defendants' claim. On June 9, 2003, the defendants filed a motion to open the judgment, to set aside the judgment and to enforce the settlement, and for a new trial. In this motion, the defendants alleged the following: "The Defendants entered into a settlement agreement with the Plaintiff on May 29, 2002 at the appellate preargument conference before the Honorable Edward F. Stodolink. When the Plaintiff failed to send the memorialization of the agreement as promised . . . the Defendants suspected the delay to be a repeat performance of the bad faith settlement on October 3, 2002 before the Honorable Barry K. Stevens. Regrettably, the Defendants were correct. After the Defendants' repeated unreturned phone calls concerning the settlement papers, the Plaintiff's counsel admitted on June 3, 2003 that once again that the representative of the Plaintiff and its counsel at the preargument conference did not have the authority to settle on May 29, 2003." The court denied this motion on July 7, 2003, with a handwritten notation, stating: "Heard, considered and denied." On July 28, 2003, the defendants filed a motion for reconsideration, which the court denied without comment on July 29, 2003. In the motion for reconsideration, the defendants argued that the court did not consider fully the plaintiff's pattern of bad faith settlements.

"It is well established that the appellant bears the burden of providing an appellate court with an adequate record for review. Practice Book § 61-10; *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 33–34, 727 A.2d 204 (1999); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998). It is, therefore, the responsibility of the appellant to move for an articulation or rectifica-

tion of the record where the trial court has failed to state the basis of a decision . . . ." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 394, 757 A.2d 1074 (2000).

In the present case, the court summarily ruled on the defendants' motion by noting that it was heard, considered and denied. There is no reasoning or analysis explaining the court's decision. When "[w]e . . . are left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us . . . would be entirely speculative." (Internal quotation marks omitted.) *Silvermine Investors, LLC* v. *Call Center Technologies, Inc.*, 81 Conn. App. 701, 709–10, 841 A.2d 695 (2004); see also *Mariculture Products Ltd.* v. *Certain Underwriters of Lloyd's of London*, 84 Conn. App. 688, 702, 854 A.2d 1100, cert. denied, 272 Conn. 905, 863 A.2d 698 (2004). Accordingly, we decline to review this claim.

### III

The defendants next claim that the court improperly rendered summary judgment on their counterclaim.[13] Specifically, the defendants argue that they were deprived of their right to due process and their constitutional right to a jury trial by the court's rendering of summary judgment in favor of the plaintiff.[14] The plain-

[13] We use the term "counterclaim" in a broad, generic sense to include the defendants' specific counterclaim, setoff and recoupment.

[14] To the extent that the defendants' brief can be read to challenge the merits of the summary judgment rendered in favor of the plaintiff, we conclude that the defendants abandoned such an argument as a result of an inadequate brief. "[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . *the parties must clearly and fully*

tiff contends that this argument is without merit and "taking [it] to its logical conclusion, then, whenever any trial court grants summary judgment in favor of a plaintiff in an action in which the defendant has asserted a counterclaim after a jury claim was filed, the granting of summary judgment would be erroneous as a matter of law as a deprivation of a right to a jury trial." We agree that the defendants' claim is wholly without merit.

"Modern summary judgment procedure was adopted in Connecticut in 1963 and was modeled on the Federal Rules of Appellate Procedure." *Gould* v. *Mellick & Sexton*, 66 Conn. App. 542, 556, 785 A.2d 265 (2001), rev'd

---

*set forth their arguments in their briefs.* We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Emphasis added; internal quotation marks omitted.) *Verderame* v. *Trinity Estates Development Corp.*, 92 Conn. App. 230, 232, 883 A.2d 1255 (2005). Put another way, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly. . . . Where the parties . . . provide no analysis of their claims, we do not review such claims." (Citation omitted; internal quotation marks omitted.) *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130–31, 884 A.2d 7 (2005).

We conclude that the defendants have briefed inadequately the issue of whether the issues presented in the counterclaim were fully and fairly litigated in the foreclosure action. The defendants argued that the court's decision refers to "intentional misrepresentation" while their claim was for "innocent misrepresentation." The plaintiff subsequently offered the conclusory assertion that "the trial court erred in finding there was an identity of issues on the special defenses and counterclaim to warrant collateral estoppel." There is no analysis, only mere abstract assertion that does not warrant any detailed discussion or review.

Even if we were to consider this argument, we would determine that it is without merit. The plaintiff responds that this was nothing more than a scrivener's error. On the basis of our review of the entire memorandum of decision, particularly the context of the claimed error, we agree with the plaintiff. We further note that at oral argument before this court, counsel for the defendants acknowledged that the court "misstated" the term "intentional" for "innocent."

on other grounds, 263 Conn. 140, 819 A.2d 216 (2003). Our Supreme Court has explained that "[t]he summary judgment procedure is designed to eliminate the delay and expense incident to a trial where there is no real issue to be tried. . . . It is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." (Citations omitted; internal quotation marks omitted.) *Mac's Car City, Inc.* v. *American National Bank*, 205 Conn. 255, 261, 532 A.2d 1302 (1987). One of the goals advanced by the summary judgment process is judicial efficiency. See *Larobina* v. *McDonald*, 274 Conn. 394, 402, 876 A.2d 522 (2005).

The defendants correctly state that the counterclaim presents legal rather than equitable issues. "Where . . . the essential basis of the action is such that the issues presented would be properly cognizable in an action of law, either party has a right to have the legal issues tried to the jury . . . ." (Citations omitted; internal quotation marks omitted.) *Northeast Savings, F.A.* v. *Plymouth Commons Realty Corp.*, 229 Conn. 634, 641, 642 A.2d 1194 (1994). The defendants' argument that the rendering of summary judgment denied them their constitutional right to a jury trial, however, ignores the reality of civil procedure in Connecticut. The rules of practice provide that judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; see also *Zanoni* v. *Lynch*, 79 Conn. App. 325, 333–34, 830 A.2d 314, cert. denied, 266 Conn. 928, 837 A.2d 803 (2003). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Lindsay* v. *Pierre*, 90 Conn. App. 696, 699, 879 A.2d 482 (2005). Our Supreme Court has

explained that a party seeking summary judgment bears a "heavy burden . . . ." *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 777, 660 A.2d 810 (1995).

In the present case, however, the court concluded that the plaintiff had met the "heavy burden" and "strict standard" of demonstrating its entitlement to summary judgment and therefore eliminated the delay and expense of a trial where there was no real issue to be tried. See *Kakadelis* v. *DeFabritis*, 191 Conn. 276, 281–82, 464 A.2d 57 (1983). As such, the defendants' right to a jury trial on the counterclaim was not implicated. Id., 282.

IV

The final remaining claim raised by the defendants is that the court improperly precluded their expert witness from testifying. In light of our conclusion that any claim relating to the foreclosure action is moot and that summary judgment properly was rendered with respect to the defendants' counterclaim, we need not address this issue.

The appeals are dismissed as moot to the extent that they challenge the judgment of foreclosure; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.